## Branson, et al. *v.* Oregonian Railway Co.

The Power of the Circuit Court over Amendments to Pleadings, after a remand from the supreme court, is not affected by the circumstance of an appeal having been taken; and while the supreme court may send a case back for amendment of pleadings and re-trial generally, it has no power to prescribe the character of the amendments to be allowed or the mode of conducting subsequent proceedings.

Property Purchased from a Private Corporation, in good faith and for an adequate consideration, is not subject to a trust in the hands of a purchaser for the satisfaction of unpaid debts of the corporation, although the purchaser had notice of such debts at the time of the purchase. And the rule is the same whether the purchase includes all the property of the corporation or only a part of it.

A Written Instrument Purporting to be an Agreement between parties, but understood and intended to be a mere form, and never delivered to take effect as an actual agreement, is of no force as between such parties, and parol evidence is admissible to prove such facts.

Appeal from Yamhill County.

The plaintiffs in the lower court and respondents herein, brought suits against the Oregonian Railway Company, Limited, the Oregon Railway Company, Limited, William Reid, Ellis G. Hughes, James B. Montgomery and Joseph Gaston, and the Dayton, Sheridan & Grand Ronde Railway Company, and the Willamette Valley Railroad Company, to enforce payment of certain obligations known in the case as freight receipts, and sought to charge the property of the D. S. & G. R. R. Co. with a trust for the payment of these obligations. Also, to charge the liability on the stock. The D. S. & G. R. R. R. conveyed its property to the W. V. R. R. Co., as consideration for the payment of the debts of the D. S. & G. R. R. R. Co. The W. V. R. R. Co. conveyed to the Oregon Railway Company, Limited, for the same consideration, and the Oregon Railway Com-

pany, Limited, conveyed the property to the Oregonian Railway Company, Limited, without consideration. Joseph Gaston subscribed for one hundred thousand dollars of the stock in the D. S. & G. R. R. R. Co., and five hundred thousand dollars in the W. V. R. R. Co., and subsequently assigned to E. G. Hughes, as set out in the opinion. The case was heard and determined in the circuit court, and went to the supreme court on appeal, when the Oregonian Railway Company appeared by new counsel and charged bad faith on its attorney and asked his removal, and also that William Reid and Ellis G. Hughes had acted in bad faith as their agents, and to such an extent as to make them liable in the case without recourse. And further, that if their case was properly presented, there would be no liability on it, and moved to remand the same to the court below. The defendants, Hughes and Reid and the Oregon Railway Company, Limited, made no objection thereto. The supreme court accordingly remanded the cause to amend pleadings and take further proofs upon and touching the question of bad faith on the part of William Reid and E. G. Hughes. There was set up an agreement between William Lowson and P. M. Cochrane and the Oregon Railway Company, Limited, whereby the Oregon Railway Company, Limited, agreed to convey the property and stock, free of debts. The Oregon Railway Company, Limited, claimed the agreement was a new form. The case came before the the supreme court again on the appeal of the Oregonian Railway company, Limited, as against the plaintiffs below, and all its co-defendants. The issue was mainly upon the charges made by the Oregonian Railway Company, Limited, as against its co-defendants, William Reid, E. G. Hughes, and the Oregon Railway Company, Limited.

*Effinger & Bourne and Edmund Robertson*, for the appellant.

*James K. Kelley*, for the plaintiffs and respondents.

*George H. Williams and C. B. Bellinger*, for the defendant and respondent Hughes.

*J. M. Bower*, for the defendants and respondents, Reid and Oregon Company.

*H. T. Bingham*, for the defendant and respondent Montgomery.

By the Court, WATSON, C. J.:

The decision heretofore rendered in this case, (10 Or., 278,) leaves but few questions for determination at the present time. Those still open for investigation will now be examined briefly.

1. The power of the circuit court to allow amendments to the pleadings after the remand of the cause, was the same as it was before the appeal was taken. The remand was ordered that the lower court might exercise this power, and this court had no authority to prescribe the character of the amendments or the terms of their allowance. And we think this view is in full accord with a fair construction of the language employed in the opinion upon the subject of the remand.

2. But conceding the power of the lower court to permit the amendment to the complaint, which the appellant objects to, still the respondents, plaintiffs below, can have no relief on the new cause of suit thus introduced. It is doubtful if the allegations show any cause of suit, but if they do, the proofs wholly fail to establish one. The theory upon which the complaint appears to have been framed, and the proofs introduced in respect to this cause of suit, seem

to be that all the debts of a private corporation are equitable liens upon its property, which are not discharged by a purchase in good faith and for an adequate consideration even if made with notice of unpaid debts.

The position taken by the respondents is thus stated by their learned counsel in his supplemental brief: "No act of the grantor or grantee of this corporation property, no matter what, can set aside this trust imposed by the law, short of the actual payment of the debt." According to this doctrine, the debt of a private corporation is a specific lien on every portion of its property, and a purchaser, with notice, can not get a good title while such debt remains unpaid.

It is true such corporation holds its property in trust for its creditors and stockholders: (Field on Corp., sec. 143; *The Chicago, etc., R. R. Co.* v. *Howard,* 7 Wall., 392.) But this is perfectly consistent with the power to sell any portion or all of its property for an adequate consideration, free from the incumbrances of its debts, the price received for the property taking its place as the trust fund: (*Powell* v. *North Missouri R. R. Co.,* 42 Mo., 63; *Hill, et al.* v. *Fogg, et al.,* 41 *Id.,* 563.)

As the case made by the pleadings and proofs in this instance shows no bad faith nor want of adequate consideration paid for the property purchased by the appellant from the Willamette Valley Railroad Company, we hold that the property in the hands of the purchasers is not subject to any trust for the satisfaction of the unpaid debts of its grantor, although chargeable with notice of them at the time of the purchase.

3. The evidence shows that Joseph Gaston subscribed for one thousand shares of the capital stock of the Dayton, Sheridan & Grand Ronde Railroad Company, of the par

value of one hundred dollars per share; and also subscribed for five thousand shares of the capital stock of the Willamette Valley Railroad Company, of the par value of one hundred dollars per share; all of which he afterwards assigned to Ellis G. Hughes, to hold in trust for any person or corporation who or which might become a purchaser of the property and stock of such corporations upon the terms specified in such assignment.

Said stock is unpaid stock, and the legal title thereto is still in Hughes. After the assignment, and on or about the fourth day of February, 1880, William Lowson, Peter Moire Cochrane, and other parties, residing in Scotland, contemplated the incorporation of the appellant, and on its behalf agreed to take said property and stock, and furnished the money used in its purchase prior to the incorporation of the appellant. As a means of carrying out this scheme and advancing the interests of the appellant, the Oregon Railway Company, Limited, was incorporated and organized under the laws of Oregon. The property purchased, except the stock, was conveyed to and temporarily vested in this corporation, until the appellant should be fully incorporated and organized, and ready to receive title to the same. On the eleventh day of December, 1880, the property was formally conveyed to the appellant, which was all the time the real owner.

4. We have already decided that the indebtedness of the Dayton, Sheridan & Grand Ronde Railroad Company, which forms the basis of this suit, is chargeable to the holders of the legal title to such unpaid stock. (See opinion, 10 Or., 278.)

In addition to the authorities there cited, to the effect that the remedy of the creditors of the corporation is against the holders of the legal and not equitable title, we refer to

the following: (*Worral* v. *Judson*, 5 Barb., 210. In the matter of the *Empire City Bank*, 18 N. Y., 199; *Burr* v. *Wilcox*, 6 Bosw., 198; S. C., 22 N. Y., 557; *Richardson* v. *Abendroth*, 43 Barb., 162; *Crease* v. *Babcock*, 10 Met., 525; *Grew* v. *Breed, et al., Id,* 569; *Holyoke* v. *Burnham*, 11 Cush., 183.)

Gaston and Hughes are, therefore, both liable to the respondents in this suit, by reason of having held the legal title to such stock; but Hughes, as last holder, stands first in the order of liability.

5. But the acts of the promoters of the appellant in making this purchase on its behalf, are seen to have been fully ratified by it after its incorporation. These acts are, therefore, to be treated as its own, and place Hughes in the position of an agent or trustee in taking and holding the legal title to the unpaid stock. Such being the relation of these parties, as we declared in our former opinions, the appellant must save Hughes from loss or damage, on account of his liability on such unpaid stock, unless it can show some abuse of authority or misconduct, on his part, justifying its release from such obligations. (Story on Agency, sec. 339; *Powell* v. *Trustees of Newburg*, 19 Johns., 284; Ewell on Agency, *353; *Moore* v. *Appleton*, 26 Ala., 633; *Coventry* v. *Barton*, 17 Johns., 142; *Hoery* v. *Halsay*, 14 Pick:, 174; *Drummonds* v. *Humphreys*, 39 Mo., 347.)

It does not appear from the evidence that Hughes was the agent of the promoters of the appellant, or so considered by any of the parties in making the purchase. He seems to have been anxious to see the purchase effected, and exerted himself to secure a favorable consideration of the scheme by the appellant's promoters, in Scotland, beyond all question. He may have anticipated some benefit to himself, ultimately, as a possible consequence of its adoption by

them. But at that time he was a mere volunteer, not entitled to the compensation nor subject to the responsibilities of an agent. He may have erred in respect to the "freight scrip" debt being an incumbrance upon the property, whose purchase he advocated, but there is nothing to show that the opinion he expresses on this subject was not earnestly entertained.

We do not think that it can be even plausibly maintained, upon the evidence in the case, that Hughes acted in bad faith in this transaction towards the appellant or its promoters. And it certainly is not sufficient to justify the appellant's release from its obligation to indemnify him against loss, through a transaction in which he was its agent and trustee, that in respect to some other matter, when no such relations existed, he may have volunteered an erroneous though honestly entertained opinion, by following which appellant has been misled and has suffered injury.

We think the appellant should be compelled to indemnify him against such loss, and that it may properly be required to do so in this suit, as we have already held. (See opinions in 10 Or., 278; also Story's Eq. Pl., sec. 72, *et seq.*; 1 Daniell's Ch. Pl. & Pr., 4th ed., 281, *et seq.*; *Greenwood* v. *Atkinson*, 5 Sim.; 419; *Camp* v. *McGillendy*, 10 Iowa, 201; *Williams* v. *Bankeval*, 19 Wall., 563.)

6. The appellant's claims to be itself indemnified by William Reid and the Oregon Railway Company, Limited, seem to us equally devoid of equity. Reid also was a volunteer, although, like Hughes, he doubtless expected to be benefited indirectly by the consummation of the scheme. There is no ground, however, in the evidence for imputing to Reid either neglect of the interests of the appellant and its promoters, or any sort of misconduct or bad faith throughout the entire transaction.

And the Oregon Railway Company, Limited, as we have seen, was a mere instrumentality in the hands of the appellant's promoters and friends for effecting the purchase and transfer of the property. A strenuous effort has been made to hold this corporation to the position of seller of the property to the appellant, assumed in a certain writing, purporting to be an agreement between it and two of the appellant's promoters, Lowson and Cochrane, signed by the former on March 4, 1880, and by the two promoters some times afterwards. It was not such seller, in fact, and all the parties concerned knew it was not. The evidence fully satisfies us that this instrument never was intended or understood by any of the parties concerned to be an actual agreement, but was, in fact, a mere form to appear in the prospectus of the proposed corporation, which the promoters were required, by the law of Scotland, to publish.

If we have drawn a correct conclusion from the evidence upon this point, then such written instrument never acquired the force of a binding agreement between the parties, and neither can predicate any rights upon it, as against the other, in this suit. Parol evidence to establish a state of facts showing that a written instrument, purporting to be an agreement, has not gone into effect, and is, therefore, no agreement, is clearly competent.

We are satisfied the decree of the circuit court upon the merits is correct, and it is therefore affirmed.