[Filed March 27, 1889.]

STODDARD, RESPONDENT, v. NELSON, APPELLANT.

WRITTEN CONTRACT — EXTRINSIC EVIDENCE. — Extrinsic evidence is not admissible, either to contradict, add to, subtract from, or vary the terms of a written contract. All antecedent or contemporaneous negotiations or agreements are merged in the writing.

APPEAL from Multnomah County.

*J. R. Stoddard, per se.*

*Moreland & Masters,* for Appellant.

STRAHAN, J. — This is an action brought to abate a nuisance, and to recover damages for maintaining the same.

The amended complaint is substantially as follows: 1. That defendant is the owner of lot 8 in block 118 of the city of Portland; that plaintiff, as trustee, leased

the front fifty-one feet of said lot of defendant, for a term, for rental value, and placed buildings upon it. Defendant thereafter, during the term, and without plaintiff's consent, built a high board fence on the rear line of said leased property, which sensibly shut out light and air from plaintiff's stores, and rendered the same unsightly, unhealthy, and to a sensible degree less fit for occupation and business, and impaired the rental value thereof, and caused the same to be vacated, to plaintiff's damage $622. 2. That said lease provided for a renewal, at a rental to be agreed upon; at the expiration of said lease, defendant promised orally to stay the damage being done to said premises by said fence, and to remove the same before July 1, 1888. The rental value was fixed, and thereupon the renewal lease was signed pursuant to said agreement; that defendant did remove said fence on or about said last-named date, but before he did so, he built and has ever since maintained another one similar, parallel to, and within two feet of said first fence, and extended the same up to the eaves of said building, which sensibly shut out light and air from both stories of said building, and rendered the same unsightly, unhealthly, and to a sensible degree less fit for occupation and business, and impaired the rental value thereof, and caused the same to be vacated, to plaintiff's damage in the sum of sixty dollars.

The defendant demurred to each count in the complaint, which being overruled, he filed his answer.

The defendant by his answer admits all of the allegations of the complaint except those relating to the location of the fence on the line, the amount of damage caused thereby, and the oral agreement to remove it.

Upon a trial before a jury, the plaintiff had a verdict and judgment for twenty-five dollars damages, from which judgment the defendant has appealed to this court, and

has assigned the following grounds of error in his notice of appeal: " 1. The court erred in not sustaining the defendant's demurrer to the plaintiff's amended complaint, and to each count thereof; 2. The court erred as is set forth in the bill of exceptions; 3. The court erred as to the admission of parol evidence as to any contract or agreement to take down the fence complained of; 4. The court erred in allowing the witnesses to testify as to any oral agreement or undertaking in regard to said fence; 5. The court erred in its instruction to the jury, as is set out in the bill of exceptions; 6. The court erred in giving judgment for costs and disbursements; 7. The court erred in ordering a warrant to issue to abate the nuisance."

The plaintiff, upon the trial, gave evidence tending to prove that defendant owned lot 8 in block 118 in the city of Portland, and that on the fourteenth day of December, 1885, he leased to John Middleton the west fifty-one feet by fifty feet for the period of two years; that said lease was in renewal of a lease theretofore made of the same ground by the defendant to one Harris, who assigned the same to Quivey, who in turn assigned to Middleton; that at the time of the execution of said leased premises a two-story building, erected by Quivey, covered the whole of said ground, and that said building also belonged to Middleton; that said building was constructed in such a manner as to receive its light and air for the rear portion thereof chiefly through windows in the rear of the building; that the remainder of said lot 8 not leased to Middleton was in the possession of defendant, and had a dwelling-house on the rear part of the same, leaving a large open space between said dwelling-house and said building owned by Middleton, over which open space the Middleton building received, by means of its rear windows, light and air for that part of the building; that

about August 19, 1886, said Middleton assigned said lease' and building to the plaintiff, and that he held said leased premises by virtue of said lease for the residue of Middleton's term; that about September 1, 1887, the defendant, without plaintiff's consent, built on the line of the part of said lot occupied under the Middleton lease by plaintiff a high and tight board fence, right along close to the building occupied by plaintiff, which darkened the windows and cut off the free circulation of air, and materially damaged and depreciated the value and use of said building; that about the time of the expiration of the Middleton lease; the matter of the renewal for three years more provided for therein, and the amount of rent to be paid upon such renewal, came up for discussion between plaintiff and defendant.

The plaintiff, being on the stand as a witness in his own behalf, was proceeding to state conversations and an agreement between himself and defendant in relation to the fence which the defendant had erected on said line.

The defendant at this point objected to any oral testimony tending to prove any contract in relation to said fence, for the reasons it appeared that a new lease had been executed by the defendant and accepted by the plaintiff, and that all agreements and covenants relative to said fence and lease were merged in the written lease.

The plaintiff then stated that he offered to prove by parol evidence that he declined to take the renewal lease unless the obstruction of said light and air caused by said fence were removed, and that there was then and there an agreement on the part of the defendant to remove the same, and that such agreement was the inducement to the acceptance by the plaintiff of the renewal lease.

The defendant renewed his objections to said evidence because the same was incompetent.

The court overruled the objections, and allowed the

evidence offered to be submitted to the jury, to which the defendant excepted, and this exception presents the first question to which our attention will be directed.

1. The rule of law is too well settled to admit of controversy that extrinsic evidence is not admissible to either contradict, add to, subtract from, or vary the terms of a written contract. (1 Hill's Code, sec. 692; 1 Greenl. Ev., sec. 275; *Bast* v. *Bank*, 101 U. S. 93; *Wilson* v. *Dean*, 74 N. Y. 531; *Naumberg* v. *Young*, 43 Am. Rep. 380; *Warren Glass Works* v. *Keystone Coal Co.*, Md., June 24, 1886; *Hutton* v. *Maines*, 68 Iowa, 650; *Williams* v. *Kent*, 67 Md. 351; *Looney* v. *Rankin*, 15 Or. 617; *Speckles* v. *Sax*, 1 E. D. Smith, 253; *Dutton* v. *Gernish*, 9 Cush. 89; *Smith* v. *Caro*, 9 Or. 278; *Thompson* v. *Libby*, 36 Minn. 287; *Parker* v. *Morrill*, 98 N. C. 232; *Miller* v. *Edgerton*, Kan., Dec. 10, 1887; *Walker* v. *Engler*, 30 Mo. 130; *Harrisin* v. *Morrison*, Minn., Nov. 2, 1888; *Freeman* v. *Freeman*, Mich., Jan. 5, 1888; *Jungerman* v. *Bovee*, 19 Cal. 354; *Steward's M. E. Church* v. *Town*, 49 Vt. 29.) These authorities might be greatly multiplied, but enough is cited to show with what uniformity and firmness the law has been applied.

The respondents cited a number of authorities from Pennsylvania, showing that the rule under consideration has not been always as rigidly applied in that state as it has elsewhere; and it is said in Cowen and Hill's Notes to Phillipps on Evidence, p. *650, note 487, "that the Pennsylvania cases on the subject of oral evidence, in respect to written instruments, are not always safe guides" when the inquiry is simply as to the rule *at law*."

In *Bat* v. *Bank*, *supra*, the supreme court of the United States says: "It is not always easy to determine when, in Pennsylvania, parol evidence is admissible to explain a written instrument, but in *Anspach* v. *Bast*, 52 U. S. 356, it is expressly declared that no case goes the length of ruling that such evidence is admitted to change the

promise itself, without proof or even allegation of fraud or mistake." To the same effect is the case of *Hucker* v. *National Oil Refining Co.*, 73 U. S. 93, as well as many others that might be cited.

It is not possible, without doing violence to principles as old and as firmly fixed as the common law itself, to escape the force and effect of these authorities. It is true, their application in this particular case may work a hardship on the plaintiff, but he was familiar with the law, and could readily have protected himself by ingrafting the stipulation into the written lease.

On the argument here the respondent insisted that the agreement in relation to the removal of the fence was collateral, and might therefore exist in parol. But was it collateral? The respondent says it was a condition upon which the renewed lease was accepted. It related to the convenience and tenantable condition of the demised premises, and was probably essential to their enjoyment. How can it, then, be claimed that this part of the agreement was collateral?

There are no allegations of fraud on the part of the defendant, in respect to the execution of said lease, or the manner he has acted in relation to the demised premises, and no question on that subject can be considered in this case. Having reached a conclusion that is decisive of the case, it is unnecessary to consider or to determine any of the other questions that were argued on the appeal.

The judgment must therefore be reversed, and the cause remanded for a new trial.

NOTE. — A reargument was allowed in this case on the question, "Did the written agreement merge the antecedent parol agreement?" On May 3, 1889, the court announced that it adhered to its first opinion. — REP.