## TALLMADGE v. HOOPER.

[61 Pac. 349, 1127.]

TIME ALLOWED FOR FILING TRANSCRIPT.

1. The expression "time allowed to file the transcript," used in Hill's Ann. Laws, § 541, subd. 2, as amended (Laws, 1899, p. 227, § 2, subd. 2), providing the time within which a transcript must be filed in the supreme court, means the original thirty days allowed by the statute and any extension thereof that may have been granted; but each extension must be secured before the previous one has expired.

APPEAL—CERTIFICATION OF TESTIMONY BY JUDGE.

2. Under Section 815 of Hill's Ann. Laws, the only cases in which the judge who heard the testimony need certify it for the purpose of appeal are those tried before referees.

PAROL EVIDENCE TO VARY WRITING—PATENT AMBIGUITY.

3. In a suit involving a written lease of a ditch, providing that the lessee shall make a certain payment of rent thirty days after he shall commence using the

waters of such ditch in placer mining, it cannot be shown by parol evidence that such payment was to be made at another time; first, because it is an attempt to vary by parol the terms of an unambiguous writing, and, second, if it is ambiguous, the ambiguity is patent and not latent, and cannot be explained by extrinsic evidence.

From Union : ROBERT EAKIN, Judge.

This is a suit by L. W. Tallmadge against A. B. Hooper and others to enjoin the prosecution of mining operations on, and to declare forfeited and canceled a lease of, mining ground. The facts are that on April 13, 1899, the plaintiff leased to defendants certain placer mining ground which she owned in Union County, a ditch or canal known as " Sparta Canal," the water rights and lateral ditches belonging thereto, and the use of the waters thereof, for the mining season of that year. The ditch is about thirty miles long, and has its source high up in Eagle Creek Mountains, some fifteen or twenty miles from the town of Sparta. During the winter season it becomes obstructed, so that it is necessary to clean out and repair it in the spring before it can be used to convey water for mining purposes, it being customary to begin at the lower end of the ditch and proceed towards its source as rapidly as the season will permit, in the mean time using such surface water from melting snow and local feeders for mining purposes as can be diverted into the ditch. The lease is in writing, and the parts material on appeal are as follows : "First—That upon the execution of this agreement the parties of the second part (Hooper and J. W. Newton) shall be entitled to the possession of the above-mentioned properties, excepting the part hereinabove reserved, for the purpose of cleaning out the ditches and preparing the placer mining ground for the mining season for the year 1899. Second—The parties of the second part shall commence cleaning out the said Sparta Canal, and the lateral ditches thereto and therefrom, as

soon as the season has so far advanced that it will permit the work to be done in an economic manner, and finish the work of cleaning out said ditch and repairing the flumes, and have the water running there through, onto the said mining premises, not later than the fifteenth day of June, 1899. * * * Fourth—The parties of the second part shall pay to the party of the first part (plaintiff), at the town of Sparta, $500.00 legal money of the United States within thirty days after they shall commence using the giants or the waters of said canal in placer mining said mining grounds. Sixty days after said payment, the further sum of $1,000.00 legal money of the United States. And an additional sum of $1,500.00 at the close of the mining season for the year 1899, when the final clean up is made. * * * Time and the complete performance of all the covenants herein contained is of the essence of this agreement ; and, in case default shall be made in any of the covenants or agreements as herein provided for, as soon as said default is made the party of the first part, or her duly authorized agent, may re-enter said premises, or any part thereof, in the name of the whole, and repossess herself of her former estate therein, and all work done and all payments made shall be forfeited by the parties of the second part to the party of the first part as rent and liquidated damages, and these presents shall become null and void.''

Immediately upon the execution of the lease, the defendants entered into possession of the property, and proceeded to clean out and repair the ditch, so that on May 3 they commenced using the giants, with water therefrom, in mining on the leased premises, and had a full head of water thereafter, although the ditch was not opened its entire length until about July 6. They made the first payment on the rent, but failed and neglected to make the second when it became due, according to the

plaintiff's interpretation of the lease; and on August 25, after repeated demands, she notified them that she elected to declare the lease forfeited, and to re-enter and take possession of the demised premises, which she attempted to do, but they refused to surrender possession, and continued thereafter to clean up the bedrock and pipe down the races on the mining premises. This suit was thereupon commenced, and the defendants were temporarily enjoined from further mining or trespassing upon the premises in question. The complaint sets out the lease in full, and alleges divers and sundry breaches thereof, but the only one necessary for us to consider is defendants' alleged failure to make the second payment of rent in accordance with the terms of their agreement. The answer admits the execution of the written contract, as set out in the complaint, but alleges that it was the understanding and agreement that the first payment of $500 rental should not become due or payable until thirty days after defendants began to use water flowing through the canal from the source thereof; and on the trial they were permitted to give evidence tending to show, and the court found, that, at the time the written contract was entered into, it was understood and agreed between the parties that the maturity of the first payment should not be counted or computed from the commencement of the use of surface water through the canal, but from the use of the water through its entire length, provided that on no account should the first payment be deferred later than the fifteenth of July, and that, by reason of such fact, the second payment of $1,000 did not become due or payable until the thirteenth of September, and hence there was no breach of the contract at the time of plaintiff's re-entry or the commencement of this suit. The court thereupon found that defendants were entitled to damages on account of the wrongful bringing of the suit,

and proceeded to assess the same at $1,208.75, by charging the plaintiff with the entire expense for labor incurred by the defendants in operating the mine from April 20 to the thirtieth of August, the $500 paid as rental, the amount expended by them for supplies for boarding house and other incidentals, and the value of their services during the same time, and crediting them with the amount of gold taken out of the mine. From this decree the plaintiff appeals, claiming that the court erred in admitting oral testimony contradicting or varying the terms of the written contract, and in assuming to assess damages on account of the wrongful issuance of the injunction.                                    REVERSED.

For appellant there was a brief over the names of *Smith & Heilner* and *Frank L. Moore*, with an oral argument by *Mr. William Smith* and *Mr. Moore*.

For respondent there was a brief and an oral argument by *Mr. Thos. H. Crawford*.

MR. JUSTICE BEAN, after stating the facts, delivered the opinion of the court.

Before considering the merits, it is necessary to dispose of two questions of practice. The appeal was perfected on the twenty-second of January, 1900. On February 15 an order was made by the court below extending to the first of April the time in which to file the transcript. On March 31, upon an application by plaintiff, and after notice to the defendants, the time was further extended until the fifteenth of April, within which time the transcript was filed. The defendants move to dismiss the appeal because (1) the application for the second extension of time was not sufficient to justify the court in making the order, and (2) such order is void for want of authority.

1. Hill's Ann. Laws, § 541, subd. 2, as amended (Laws, 1899, p. 227), provides that the appellant shall, within thirty days after the appeal is perfected, file with the clerk of the appellate court a transcript or such an abstract as the rules of the court may require, of so much of the record as may be necessary to intelligibly present the questions to be decided, together with copies of certain portions of the original record, and, if the transcript or abstract is not so filed, the appeal shall be deemed abandoned, and the effect thereof terminated ; but the trial court or judge thereof, or the supreme court or a justice thereof, is authorized, upon such terms as may be just, to enlarge the time ; but "such order shall be made within the time allowed to file the transcript, and shall not extend it beyond the term of the appellate court next following the appeal." So far as the first objection is concerned, it is sufficient to say that it was a matter within the sound discretion of the trial judge, with the exercise of which this court will not interfere except in case of a manifest abuse thereof, which has not occurred in this instance.

In support of the second contention, it is argued that while the trial court or judge thereof, or the supreme court or a justice thereof, is authorized to enlarge the time for filing a transcript on appeal, such order can be made only within the thirty days allowed to file the transcript. But this does not impress us as the better view. The provision of the act of 1899 for the extension of time in which to file the transcript is simply a copy of the statute upon the subject as it had been in force for many years, under which, as we understand it, the practice has been, upon a proper showing, to make an order for such extension at any time before the appellant is in default ; and this, in our opinion, is the proper construction of the statute. The "time allowed to file the transcript," within

the meaning of the law, is the thirty days provided by statute, or such an extension thereof as may have been granted.   Therefore the motion to dismiss must be overruled.

2.   The defendants also move to strike from the files what purports to be the testimony taken in the court below, and upon which the trial was had.   The suit was tried before the court without a referee, and the testimony taken by the official reporter, which he subsequently (presumably upon the plaintiff's request) transcribed, certified to, and filed with the county clerk, who certifies it to this court as the testimony and exhibits in the case as filed in his office.   The defendants claim that the testimony should have been identified by the certificate of the trial judge, as provided in section 815 of the statute.   By the act of 1889 (Laws, 1889, p. 142), the circuit judge of each judicial district in the state is authorized, in his sound discretion, to appoint a skilled stenographer as official reporter in his district, whose duty it is, upon the trial of any cause, if requested by either party or ordered by the judge, to take accurate shorthand notes of the oral testimony and other proceedings, which shall be filed in the office of the clerk of the court where the trial is had. If the court, or either party to the suit, or his attorney, requests a transcript of the notes into longhand, it is made the duty of the reporter to cause full and accurate typewritten transcripts thereof to be made, which, when certified to by him as provided in the statute, shall be filed with the clerk of the court where the cause was tried, for the use of the court or the parties, and shall be deemed *prima facie* a correct statement of the testimony and proceedings on the trial.   Section 397 of the statute, as amended (Laws, 1893, p. 26), provides that all issues of fact in suits shall be tried by the court, unless the same is referred to a referee pursuant to the provisions of sec-

tion 815, and, if so tried, the evidence shall be presented and reduced to writing, to be either in writing or in stenographic notes, which shall be extended into long-hand, and filed with the clerk of the court in the cause at the request of any of the parties to such suit, or if required by the court, and, where not required to be extended, the notes shall be so filed. Section 815, as amended (Laws, 1893, p. 27), provides that, whenever a suit in equity is at issue upon a question of fact, the court may refer the same to a referee, except as provided in section 397, to take the testimony, and report the same to the court, within such time as may be ordered, and, "when an equity cause has gone to a final decree, the judge of the court rendering the decree shall, within ten days after the entry of the decree, by a proper certificate, identify all the evidence in the cause, whether consisting of the testimony of the witnesses, documentary evidence or exhibits."

The contention for the defendants is that, under these several provisions, before any evidence in an equity case can be considered by the appellate court, it must be identified by the trial judge in the manner provided in section 815, while the plaintiff contends that the latter provision applies only to suits in which the testimony has been taken before a referee, and not to those which have been tried by the court and the testimony taken by the official stenographer. There is undoubtedly some confusion in the statute, and the point is not entirely clear, but we are inclined to concur in the interpretation urged by the plaintiff. A stenographer is an officer of the court, charged with the duty of correctly reporting all the proceedings on the trial, and his certificate is entitled to the same faith and credit as that of any other officer. The transcription of his notes, when certified to by him and filed with the clerk of the court where the cause was

tried, becomes a part of the record and *prima facie* a correct statement of the testimony and proceedings on the trial, and is entitled to faith and credit as such in the appellate court. Nor do we think it makes any difference whether a request for the transcription is made at the time of the trial or afterwards. If no such request is made at that time, the stenographer's notes are required to be filed as a part of the record, and a subsequent transcription thereof, certified to by him, is merely the putting into more intelligible form what is already a part of the record. We are of the opinion, therefore, that the motion to strike the testimony from the files should also be denied.

3. We come, then, to the merits of the case. As already stated, the court below permitted the defendants to offer in evidence, over the plaintiff's objection, oral testimony tending to show that at the time the lease was executed it was understood and agreed between the parties that the first payment should become due and payable thirty days after the defendants began to use water through the entire length of the Sparta canal or ditch, and for that reason the second payment was not due at the time of the commencement of the suit, and therefore defendants were not in default. It is difficult to perceive upon what ground it can be claimed that this testimony is admissible. Clearly, its object and effect was to vary the terms of the written contract between the parties, and no principle of evidence is better settled than that when persons put their contracts in writing, it is, in the absence of fraud, accident or mistake, "conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, was reduced to writing:" 1 Greenleaf, Ev. (15 ed.) § 275. In *Looney* v. *Rankin*, 15 Or. 617 (16 Pac. 660), Mr. Justice THAYER, after alluding to the well settled rule that parol

evidence cannot be used for the purpose of contradicting, adding to, substracting from, or varying the terms of a written contract, or to control its legal operation or effect, proceeds : "Another equally well settled principle, kindred to the one above stated, is that all oral negotiations or stipulations between the parties, preceding or accompanying the execution of a written instrument, are regarded as merged in it. The reason of the rule, as explained by judges and text writers, is 'that the parties, by making a written memorial of their transaction, have implicitly agreed that, in event of any misunderstanding, that writing shall be referred to as the proof of their act and intention ; that such application as arose from the paper, by just construction or legal intendment, should be valid and compulsory on them ; but that they would not subject themselves to any stipulations beyond their contract, because, if they meant to be bound by any such, they might have added them to their contract, and thus have given them a clearness, a force, and a direction which they would not have by being trusted to the memory of a witness.' And, where a written contract appears on its face to be complete, no addition to, or contradition of, its legal effect by parol stipulations, preceding or accompanying its execution, can be admitted, any more than its alteration through the same means in any other respect. The law controlling the operation of a written contract becomes a part of it. The rule here referred to, so far as it extends, is inflexible :" 1 Hill's Ann. Laws, § 692; *Stoddard* v. *Nelson*, 17 Or. 417 (21 Pac. 456); *Portland Nat. Bank* v. *Scott*, 20 Or. 421 (26 Pac. 276); *Hindman* v. *Edgar*, 24 Or. 581 (17 Pac. 862); *Abraham* v. *Oregon & Cal. R. R. Co.* 37 Or. 495 (—— L. R. A. ——, 12 Am. & Eng. R. R. Cas. [N. S.] 250, 60 Pac. 899). By the terms of the written contract, the first payment was to become due within thirty days

after the defendants "shall commence using the giants or the waters of said canal in placer mining said mining grounds," and the second payment within sixty days thereafter.   It is admitted, and the court below found, that the defendants began using the giants and mining on the leased premises with water from the canal on the third day of May; so that, under the plain and unambiguous stipulation of the contract, the first payment became due thirty days, and the second within ninety days, from that date, or about the first of August, and prior to the declared forfeiture and re-entry by the plaintiff and the commencement of this suit.

It is claimed by the defendants, however, that the contract upon this point is ambiguous, and that parol evidence is admissible for the purpose of explaining such ambiguity, and this seems to have been the theory of the trial court.   As we read the contract, there is no ambiguity in its language in this regard, but its provisions are clear and distinct.   But, if there is any ambiguity, it is patent upon the face of the instrument, and cannot be removed by the application of extrinsic evidence : *Holcomb* v. *Mooney*, 13 Or. 503 (11 Pac. 274) ; *Bingham* v. *Honeyman*, 32 Or. at p. 133 (51 Pac. 735, 52 Pac. 755) ; 1 Greenleaf, Ev. (15 ed.) § 297, *et seq*.   We are of the opinion, therefore, that the court below erred in admitting in evidence the oral testimony concerning the maturity of the payment under the lease, and in finding, as a matter of fact, that defendants were not in default in the payment of rent at the time of the re-entry, or attempted re-entry, by the plaintiff, and that, on the contrary, the second payment was long past due, and on account thereof plaintiff was entitled, under the provisions of the lease, to declare it forfeited, and to repossess herself of the leased premises.   This conclusion renders unnecessary the con-

sideration of the other question presented by the plaintiff. The decree of the court below will therefore be reversed, and a decree entered here as prayed for in the complaint.

                                        REVERSED.

Decided 13 August, 1900.

## ON MOTION FOR REHEARING.

PER CURIAM.   The two questions of fact argued in the petition for rehearing were fully considered by the court before the case was decided.   We then concluded that the evidence did not show a subsequent parol modification of the written contract set out in the complaint, nor a subsequent parol waiver of the time stipulated for the $1,000 payment.   A re-examination of the record has confirmed us in this view.   The petition for rehearing is therefore denied.                           REHEARING DENIED.

Decided 30 July, 1900.