Argued April 13, reversed April 28, 1914.

## GILL v. COLUMBIA CONTRACT CO.*

(141 Pac. 163.)

**Contracts—Merger—Parol Evidence—Prior Negotiations.**

1. Under Section 713, L. O. L., providing that when the terms of an agreement have been reduced to writing there can be, between the parties, no evidence of its terms other than its contents, except where a mistake or imperfection is put in issue or its validity is in dispute, a written agreement superseded all former negotiations, and, till modified, fulfilled or rescinded, constitutes the only standard between the parties as to its subject matter.

[As to evidence to explain words used in written contract, see note in 122 Am. St. Rep. 545.]

**Brokers—Compensation—Performance of Contract.**

2. A broker employed to sell the hull of a vessel for $15,000, who did not even bring together the owner and purchaser, but at most endeavored to interest a purchaser, who afterward purchased the hull and engines for $20,000, is not entitled to a commission on the sale.

[As to when a broker is entitled to commissions, see note in 28 Am. St. Rep. 546.]

From Multnomah: HENRY E. MCGINN, Judge.

Department 1.  Statement by MR. JUSTICE BURNETT.

This is an action by J. S. Gill against the Columbia Contract Company, a corporation, to recover $3,000,

---

*As to the performance of a contract by a real estate broker to find a purchaser or effect an exchange of his principal's property, see note in 44 L. R. A. 593. And upon the necessity of securing written contract from purchaser to entitle real estate broker to commissions, see note in 46 L. R. A. (N. S.) 129.        REPORTER.

as commissions on the sale of certain personal property. The amended complaint in this case upon which the action was heard, after stating the corporate character of the defendant, alleges:

"That on or about the 20th day of January, 1912, plaintiff and defendant entered into a contract by the terms of which defendant hired and employed plaintiff, as a broker, to procure a purchaser for that certain vessel owned by defendant and known as the 'Minnie Kelton' all for the sum of $15,000; that thereupon, and pursuant to said agreement, plaintiff procured one E. H. Dodge, as a prospective purchaser, and that thereafter, and on or about the 15th day of April, 1912, said Dodge purchased said vessel and engines from defendant at a valuation of and for the sum of $20,000, or its equivalent; that the plaintiff procured said purchaser for defendant entirely by his own efforts and work, and plaintiff was the procuring cause of said sale."

Alleging that the reasonable value of his services was $3,000, which the defendant has failed to pay, the plaintiff demands judgment for that sum, together with costs and disbursements. The answer denies all the allegations of the complaint, except that concerning the corporate character of the defendant, and alleges, in substance, that on January 12, 1912, the defendant gave to the plaintiff an option to purchase the hull of the "Minnie Kelton" for a period of 60 days from that date, which the defendant did not exercise; and that this constitutes the only contract which the defendant made with plaintiff regarding the vessel in question. The reply admits the execution of the option mentioned in the answer, but alleges that it was terminated by the mutual consent of the parties about January 20, 1912. From a verdict and judgment for the plaintiff, the defendant appeals.

REVERSED, WITH DIRECTIONS.

For appellant there was a brief over the name of *Messrs. Teal, Minor & Winfree,* with an oral argument by *Mr. Wirt Minor.*

For respondent there was a brief over the names of *Mr. Claude Strahan* and *Mr. Waldmere Seton,* with an oral argument by *Mr. Strahan.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1. At the trial, over the objection of the defendant, the plaintiff was permitted to give a large amount of evidence about negotiations between the parties occurring long prior to the execution of the written option mentioned, which was likewise introduced in evidence, and reads thus:

"Portland, Oregon, January 12, 1912.
"Jos. S. Gill, Portland, Oregon.

"We hereby give to you option to purchase the hull of the steamship 'Minnie D. Kelton' for a period of sixty days from the above date and on the following terms: Upon taking over the boat the sum of $10,000 is to be paid in cash, the balance of $10,000 with interest at seven per cent per annum on or before one year at your option. Security satisfactory to the seller for the balance of $10,000, with interest shall be furnished by you before title to the boat shall pass from the seller to you. If at the end of sixty days from the above date a financial showing can be made satisfactory to A. L. Mills of the First National Bank of Portland, Oregon, then this option may be extended.

"Yours very truly,
"[Signed] COLUMBIA CONTRACT CO.,
"Per DANIEL KERN,
"President."

Section 713, L. O. L., says:

"When the terms of an agreement have been reduced to writing by the parties, it is to be considered as con-

taining all those terms, and therefore there can be, between the parties and their representatives or successors in interest, no evidence of the terms of the agreement, other than the contents of the writing, except in the following cases: 1. Where a mistake or imperfection of the writing is put in issue by the pleadings; 2. Where the validity of the agreement is the fact in dispute. But this section does not exclude other evidence of the circumstances under which the agreement was made, or to which it relates, as defined in Section 717, or to explain an ambiguity, intrinsic or extrinsic, or to establish illegality or fraud. The term 'agreement' includes deeds and wills as well as contracts between parties.''

Section 717, L. O. L., provides only a canon of construction not applicable here.

It is settled law under this section quoted that when parties reduce their agreement to writing, it supersedes all former verbal negotiations and must thenceforward, until fulfilled, modified or rescinded, constitute the only standard of conduct between the parties respecting the subject matter of the agreement. Among those cited in the note to this section are the following cases illustrative of this principle: *Tallmadge* v. *Hooper,* 37 Or. 512 (61 Pac. 349, 1127); *Stoddard* v. *Nelson,* 17 Or. 417 (21 Pac. 456); *Portland Nat. Bank* v. *Scott,* 20 Or. 421 (26 Pac. 276); *Hindman* v. *Edgar,* 24 Or. 583 (17 Pac. 862); *Marx* v. *Schwartz,* 14 Or. 181 (12 Pac. 253); *Weidert* v. *State Ins. Co.,* 19 Or. 261 (24 Pac. 242, 20 Am. St. Rep. 809). See, also, *Williams* v. *Hood River Ry. & Power Co.,* 57 Or. 251 (110 Pac. 490, 111 Pac. 17, Ann. Cas. 1913A, 177). The court was in error when it received such testimony.

2. Relying, however, upon the negotiations occurring prior to the execution of the written option as proof of his allegation of employment, the plaintiff undertook to establish that he had procured E. H. Dodge to buy

the vessel. The utmost he shows by his testimony is that he endeavored to interest Dodge in the purchase of the hull of the vessel which it seems had been dismantled and used as a barge; but he nowhere discloses that Dodge ever agreed to buy the hull, or that plaintiff brought Dodge and the defendant together. The nearest approach to proof of procuring Dodge as a purchaser is the plaintiff's testimony that he made an engagement with the president of the defendant and with Dodge to go at the same time to where the vessel lay for the purpose of inspecting it; that the president went there, but that Dodge failed to keep his engagement and did not go. It appears that after the option had expired by its own terms, Dodge purchased the vessel and engines for $20,000. The testimony fails to show that the plaintiff procured Dodge to accept the offer for the sale of the hull at $15,000. The substance of plaintiff's testimony is that his contract related to the sale of the hull, and it is so treated in his brief. Indeed, his complaint is to the same effect. An offer to sell the hull at $15,000 is not accepted by a counter offer to buy the hull and engines for $20,000. The rule is that a broker earns his commission when and not until he procures a buyer for the property offered, who is ready, willing and able, to buy on the terms prescribed. To find a "prospective" purchaser is not enough. The end to be attained by the broker is to secure a purchaser who is then and there ready, able and willing to accept the offer in its identical terms. The acceptance must strictly conform to the offer. The complaint itself is faulty in not showing that Dodge accepted or was ready, able and willing to accept the offer precisely as made. For all that appears Dodge may have been unwilling to purchase the hull alone at any price or without a substantial reduction from the asking price, while, as the event

proves, he was willing to buy the hull together with some engines at a larger valuation. The evidence likewise is clear that the plaintiff did not succeed in procuring Dodge to accept the hull as offered on the terms prescribed. Hence, even on the theory that the plaintiff was employed as a broker, he failed to make out performance of the conditions of his employment as alleged.

The judgment of the Circuit Court is reversed and the cause remanded, with directions to enter a judgment of nonsuit.         REVERSED, WITH DIRECTIONS.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE MOORE and MR. JUSTICE RAMSEY concur.