Argued October 11, reversed and remanded November 6, 1917.

## LEAVITT & CO. *v.* DIMMICK.*

(168 Pac. 292.)

**Evidence—Admissibility—Parol Evidence Varying Writings.**

1. All verbal negotiations which precede or accompany a written contract are merged in the writing, which becomes the sole evidence of the agreement.

**Evidence—Admissibility—Parol Evidence Varying Writings.**

2. Where plaintiff and defendant signed a contract by which defendant was given exclusive agency in certain territory for the sale of automobiles, and under which he became indebted to plaintiff for the price of the automobile, he could not, in an action for such price, introduce evidence of a contemporaneous oral agreement, enlarging

*For cases on the general rule that parol evidence is not admissible to vary, add to or alter a written contract, see note in 17 **L. R. A.** 270.          REPORTER.

the territory of his agency or otherwise changing the terms of the written contract.

[As to supplementing written contract by proof of collateral oral agreement, see note in **Ann. Cas.** 1914A, 454.]

**Appeal and Error—Scope of Review—Conflicting Evidence.**

3. A verdict upon a question of fact is not conclusive if there is no competent evidence of the existence of such fact.

**Principal and Agent—Scope of Authority—Notice to Third Persons.**

4. Where the contract negotiated by plaintiff's agent and defendant contained a clause that it should not be considered in force until approved by plaintiff's vice-president, defendant had notice that it was beyond the power of the agent to make a contemporaneous oral agreement different from the written agreement.

**Principal and Agent—Accounting by Agent—Setoff.**

5. In action for money received by the agent for the sale of automobiles, the agent cannot recover on counterclaim expenses of trips to the principal office to adjust alleged overcharges made by plaintiff.

From Marion: PERCY R. KELLY, Judge.

Action by J. W. Leavitt & Company, a corporation, against B. M. Dimick. From a judgment on a verdict in favor of defendant, on a counterclaim, plaintiff appealed. Reversed and remanded.

Department 2. Statement by MR. CHIEF JUSTICE McBRIDE.

This was an action at law brought by plaintiff, a California corporation, which at the dates mentioned in the complaint was engaged in the sale of Willys-Overland automobiles in California and Oregon. There are two causes of action stated: The first to recover a balance of $146.13, alleged to be due for goods, wares, and merchandise sold to defendant between October 1, 1914, and June 15, 1915; and the other alleging that between August 20, 1913, and February 10, 1915, plaintiff delivered to defendant on consignment certain automobiles and accessories, for which defendant agreed to pay plaintiff, upon the sale of said property, the sum

of $17,491.26; that defendant has sold said property, but has only paid thereon to plaintiff the sum of $16,583.90, leaving a balance due plaintiff of $907.36.

Defendant answered the first cause of action, admitting that plaintiff had sold to him certain goods, wares, and merchandise, and that defendant had paid thereon $233.75, but denied other allegations of the complaint. As to the second cause of action defendant admitted that plaintiff had sold him certain automobiles and that he had paid thereon $16,583.90, but denied all other allegations of that cause of action, except the corporate existence of plaintiff; and as a separate defense and by way of counterclaim the defendant pleaded substantially the following state of facts:

"That prior to May, 1913, defendant herein was engaged in the automobile and garage business in Woodburn, Marion County, Oregon, and that on or about the 15th day of May, 1913, plaintiff and defendant herein entered into a contract by the terms of which it was mutually understood and agreed that in consideration of defendant herein establishing a branch of his business in Salem, Marion County, Oregon, and in consideration of said defendant equipping said branch with the necessary machinery and tools for operation, and in further consideration of said defendant's agreement to accept the agency for the sale of Overland automobiles which plaintiff herein was distributing as Pacific Coast sales and distributing agents for the Willys-Overland Company, manufacturers of Overland automobiles, that plaintiff herein would give and assign to defendant the sole and exclusive agency for the sale of said automobiles within the territory described as follows: For the year 1913 it was agreed that said defendant should have Marion County and a small strip off and from the south side of Clackamas County. And for the year 1914 it was agreed that said defendant should have the said agency for all of Marion County and Polk County and a por-

tion off and from the south side of Clackamas County, and that thereafter said defendant should have the contract for the sale of said automobiles within the territory last above described so long as plaintiff herein retained the sales and distributive agency from the said manufacturing company, and so long as defendant worked said territory thoroughly and continued to sell said cars. And it was further understood and agreed by the terms of said contract that said Overland automobiles should be furnished to defendant by plaintiff for whatever prices the factory might establish, from year to year. And that said prices would be made upon a graduated basis so that the more cars which defendant sold would entitle him to a better price in payment therefor. And it was further understood and agreed that plaintiff would furnish to defendant or to defendant's purchasers or subagents within the territory aforesaid, all supplies, extras, and fixtures which were demanded, and that said defendant should receive 20 per cent upon all supplies, extras, and fixtures so furnished within said territory whether furnished direct to said defendant or otherwise, and that said extras, supplies, and fixtures were to be furnished to defendant at regular established prices. * * That plaintiff herein has been at all times hereinafter mentioned, and now is, the sales and distributing agent for the Willys-Overland Company, which said company was at all times hereinafter mentioned and now is the manufacturer of Overland automobiles. * * That defendant herein duly and regularly performed all of the obligations and parts of said contract above mentioned, upon his part to be kept and performed.''

The defendant assigned the following breaches of said alleged contract:

(1) That in 1914 plaintiff after duly assigning the territory which defendant was entitled to under the alleged oral contract reassigned a portion of the same territory to other agents, to wit, a portion off of the north side of Polk County and that portion of Clack-

amas County which had been assigned to defendant, and that these agents entered said territory and interfered with defendant's attempt to sell cars therein, to his great damage in the sum of $600.

(2) That in 1915 plaintiff refused to comply with the terms of said alleged oral contract in this: It absolutely refused to assign any portion of Polk or of Clackamas Counties, but assigned to outside agents a portion of Marion County reaching to within a mile and a half of defendant's Woodburn garage, and that during said year defendant lost the sale of cars in said territory to his damage in the sum of $2,571.

(3) That for the year 1916 plaintiff refused to assign any territory to defendant, and withdrew his agency, to his damage in the sum of $10,000.

(4) Through plaintiff's failure to comply with said alleged contract by crediting and allowing defendant 20 per cent of all extras, fixtures, and supplies furnished within said territory defendant is damaged in the sum of $200.

(5) That on account of plaintiff overcharging defendant for supplies and fixtures defendant was compelled to make three trips to Portland to straighten out the matter of overcharges, and that the expense of making said trips, together with a reasonable compensation for defendant's time, is the sum of $30, and that in addition defendant has paid $4.50 of said overcharges, making in all $34.50 due from plaintiff to defendant in said behalf.

The defendant further averred that plaintiff made a wrongful charge for interest on consignments, that in order to adjust such wrongful claim defendant was compelled to make a trip to Portland, and that a reasonable compensation for the expense of such trip and defendant's loss of time is $10. The answer concluded

with a prayer for judgment for defendant for $12,814.50.

The reply denied generally all the affirmative allegations of defendant's answer.

Defendant, over the objection of plaintiff, testified in substance that about May 1, 1913, while he was engaged in selling the Willys-Overland automobiles, at Woodburn, in Marion County, under an agreement with defendant giving him the right to sell the same in that part of Marion County north of a line drawn through Wheatland, Brooks, and Silverton, and in Clackamas County south of Cole, he was called to Portland by Mr. Scarlett, since deceased, and then plaintiff's Oregon manager, who proposed to him that he should extend his business and establish a garage at Salem, and that plaintiff would give him the exclusive agency for sale of Willys-Overland automobiles in Polk and Marion Counties and part of Clackamas County so long as defendant continued to sell cars and did a satisfactory business and as long as plaintiff had the sale of such cars. It is not claimed that there was any breach of the written contracts. Plaintiff objected to the evidence of the oral agreement with Scarlett, but the court admitted the testimony, and this is the pivotal point in this appeal. Defendant was allowed to testify that after June 30, 1913, plaintiff refused to renew his contract or to give him the territory which he claimed was orally promised him by Scarlett prior to the execution of the written contract dated May, 1913, and to his consequent damage by reason of the loss of sales of automobiles which he might otherwise have made. Scarlett having died, plaintiff was without evidence to deny making the oral agreement, but the authority of a branch manager to make such agreement was disputed. The principal

assignments of error are dependent upon the admissibility of the disputed oral agreement with Scarlett, and consequent instructions to the jury. There was a verdict for defendant for the sum of $1,500, and plaintiff appeals.          Reversed and Remanded.

For appellant there was a brief over the name of *Messrs. Chamberlain, Thomas, Kraemer & Humphreys,* with an oral argument by *Mr. L. J. Kraemer.*

For respondent there was a brief and an oral argument by *Mr. Walter C. Winslow.*

Opinion by Mr. Chief Justice McBride.

1, 2. We are of the opinion that evidence of the alleged oral agreement was improperly admitted. It is a rule as old as the law of evidence and one re-enforced by statute that all verbal negotiations which precede or accompany a written contract are merged in the writing, which is the sole evidence of the agreement: Section 713, L. O. L.; *Hindman* v. *Edgar,* 24 Or. 581 (17 Pac. 862); *Gill* v. *Columbia Contract Co.,* 70 Or. 278 (141 Pac. 163); *Looney* v. *Rankin,* 15 Or. 617 (16 Pac. 660); *Stoddard* v. *Nelson,* 17 Or. 417 (21 Pac. 456); *Weidert* v. *State Ins. Co.,* 19 Or. 261 (24 Pac. 242, 20 Am. St. Rep. 809); *Tallmadge* v. *Hooper,* 37 Or. 503 (61 Pac. 349, 1127); *Mageon* v. *Alkire,* 41 Colo. 338 (92 Pac. 720). There is not an element of defendant's alleged oral contract which is not contradicted by or embraced in the written contract. To say that he should in the future have other territory is directly contradicted by that clause which provides that defendant shall have the right to sell in the territory specified "and not elsewhere" as well as by that clause which provided that defendant should have the right

to sell Willys-Overland cars ''until and including the
30th day of June, 1913,'' that ''this contract shall ex-
pire by its own limitation on June 30, 1913,'' and the
further clause that the written contract ''supersedes
all contracts or agreements of a prior date, and that
any and all existing contracts are hereby terminated
at the date of the acceptance of this agreement.''

Conceding for the purposes of this discussion that
the oral agreement was made as alleged, it is impos-
sible to recognize it as surviving after these written
stipulations had been signed. In September, 1913, a
new agreement in writing was made, which by its terms
expired June 30, 1914, but which contained all the
conditions and stipulations of the original written
contract heretofore quoted, but granting to defendant
the additional territory which he claims was promised
in the oral agreement. Thereafter plaintiff refused
to renew the contract for 1915. Upon the face of it
the written agreement is the complete contract, and
is practically declared to be so by the clause revoking
all prior agreements. Both counsel for respondent
and the court below seem to have been under the im-
pression that by the authority of *La Grande National
Bank* v. *Blum,* 26 Or. 49 (37 Pac. 48), and *Hillyard* v.
*Hewitt,* 61 Or. 58 (120 Pac. 750), the evidence respect-
ing the alleged oral agreement was admissible, but
when analyzed neither of these cases is in point. In
*La Grande National Bank* v. *Blum* this court held:

''The maker of a note as against the payee may
show by extrinsic evidence that the note was made and
delivered as security for the performance of a con-
tract by him, and that he has performed his contract;
such evidence does not change or add to the terms of
the writing, but shows simply a failure of considera-
tion.''

In the case at bar the oral evidence does change the terms of the written contract in that it makes a continuous contract from year to year, whereas the written contract is for a specified period with a stipulation that it shall terminate at the expiration of that period. It also contradicts and changes that portion of the written contract abrogating all previous contracts. The two cannot be reconciled. In *Hillyard* v. *Hewitt,* 61 Or. 58 (120 Pac. 750), the facts were as follows: The plaintiff brought an action to recover for the price of a consignment of window locks which it alleged had been sold by it to defendant upon his written order. Defendant admitted giving the order, but alleged that said order was given in consideration that plaintiff would appoint defendant its general agent for the sale of the locks in Marion County with a commission for each lock sold; that after obtaining the order the plaintiffs refused to appoint him their agent, and that thereupon he returned the locks to them. The plaintiffs denied making the agreement and alleged that the agent who took the order had no authority to appoint subagents or to make any agreement except for the direct sale of the merchandise. The court's statement of the evidence is as follows:

"Upon the trial plaintiffs called defendant as a witness, and proved by him the execution of the order. The testimony of defendant tended to show that at the date of the signature of the order an agent of plaintiffs visited his place of business, and said he was establishing agencies for the sale of plaintiffs' goods, and wanted somebody to take the agency for Marion County. He proposed to establish the agencies, giving exclusive territory, so that no one else would have a right to sell in that territory. Under these conditions, defendant agreed to sign the order, which was filled out by the agent. He testifies that the agent was

sitting at a table opposite defendant, and passed the order over to him to sign, at the same time having his hand on the upper end of the paper, and when defendant affixed his signature the agent took the paper and started to leave the room; that as he was passing out through the door defendant inquired about the assignment of territory, and the agent answered 'that he had no right to assign that territory, but that the company would assign it when the goods were sent.' "

In deciding the case we said:

"Where a contract, complete in its terms, is shown to have been executed by the parties, it is clear that one will not be permitted to add other terms by parol evidence; but this rule does not prohibit a party from showing that what appears to be a contract is not so in fact, but is merely a part of a larger transaction, which has never been completed: Lawson, Contracts (2 ed.), §§ 382, 383; Greenleaf, Evidence (16 ed.), § 284a; *Branson* v. *Oregonian Ry. Co.,* 11 Or. 161 (2 Pac. 86); *Allen* v. *Konrad,* 59 App. Div. 21 (68 N. Y. Supp. 1057). The testimony tends to show that the contract contemplated included two things: (1) The assigning to defendant of an exclusive agency for the sale of plaintiffs' goods; and (2) the giving by defendant of an order for the goods which he contemplated selling. Plaintiffs' agent procured defendant's signature to the order, and then vanished, without making the assignment, and plaintiffs refuse to perform that part of the agreement which was the procuring cause of defendant's signature. Here is no complete agreement, but merely half of an agreement."

There was nothing to contradict the order signed by the defendant in that case. The oral evidence in regard to the transaction tended only to show that the consideration upon which the order was founded had failed by reason of the fraudulent conduct of the plaintiffs' agent. The evidence regarding the alleged oral contract should not have been admitted.

3. It is urged by counsel that the jury has found that such contract was made and that its finding is conclusive here; but there being no competent evidence of the existence of the agreement such a result cannot be conceded.

4. The alleged oral agreement was not within the actual or apparent power of the agent to execute. Defendant had been doing business as plaintiff's sales agent in 1912, and the agreement for that year contained a clause providing that it should not be considered in force until approved by the vice-president, and another clause which provided that its acceptance should be evidenced by the signature of plaintiff's vice-president. It will thus be seen that defendant had full notice of the extent of the agent's powers; and if with this notice he chose to rely upon a "gentleman's agreement" with the agent, he did so at his peril. It is said in *Hillyard* v. *Hewitt,* 61 Or. 58 (120 Pac. 750):

"Parties dealing with an admitted agent of another have a right to assume, in the absence of anything indicating a contrary state of affairs, that his agency is general": *Aerne* v. *Gostlow,* 60 Or. 113 (118 Pac. 277).

In the case at bar everything indicated a "contrary state of affairs." Every contract which the defendant signed was notice to him that the agent's authority was limited, and with such notice it was defendant's duty to inquire and ascertain the extent of the agent's authority before acting upon the alleged oral contract.

The case at bar furnishes an apt argument in favor of the salutary rule against allowing written agreements to be frittered away by evidence of parol negotiations. The plaintiff is a nonresident corporation, and the lips of Scarlett, who it is alleged made an oral agreement much broader in its scope than the written contract which was forwarded to the company, are

sealed by death.   It was to avoid the possibility of such contingencies as these that the maxim "Parol evidence shall not be admitted to vary or contradict a written agreement" was introduced; and while the defendant's contention may possibly be true in fact, it is contrary to the policy of the law to vary the rule.

5. The defendant counterclaimed for the expense of certain trips made by him to Portland to adjust certain alleged overcharges made against him by plaintiff. We know of no law, and counsel for defendant has cited us to none, justifying a recovery for these items.   They should have been wholly eliminated from the consideration of the jury.

The judgment is reversed and a new trial directed.

REVERSED AND REMANDED.

Mr. Justice Moore, Mr. Justice Bean and Mr. Justice McCamant concur.