[Filed June 17, 1886.]

## GEORGE W. HOLCOMB *v.* MARY MOONEY.

EJECTMENT—DESCRIPTION—PAROL EVIDENCE—AMBIGUITY.—In an action of ejectment, where the description of the land conveyed is clear and unambiguous, resort cannot be had to parol evidence to show an intent to convey a different tract.

SAME—LATENT AMBIGUITY.—A latent ambiguity occurs when the deed or other instrument appears sufficiently certain and free from ambiguity, but the ambiguity is produced by something extrinsic, or some collateral matter out of the instrument.

PAROL EVIDENCE—WHEN RESORTED TO.—Where a deed is apparently clear and complete, yet in the course of executing and applying it it appears that its words are applicable to different things or persons, and there is nothing in it to show which is meant, extrinsic evidence is admissible to show the true meaning.

MISTAKE IN DEED—EQUITY.—Where, by mistake, the description contained in a deed does not correspond with the intent of the parties, resort must be had to equity for its correction.

CLACKAMAS COUNTY.   Defendant appeals.   Affirmed.

This is an action of ejectment brought to recover possession of a strip of land lying along the boundary between the premises of plaintiff and defendant. The facts out of which the action arose are as follows: In 1882, Elizabeth Paddock, being then the owner of the whole tract of land claimed by both parties, sold a portion of the same to Anna M. Dedman, who afterwards conveyed the same to defendant. In August, 1883, Mrs. Paddock sold the remainder of the land to the plaintiff. The deed from Elizabeth Paddock to Anna M. Dedman described the land by course and distance alone, without any call for monuments or survey, excepting the beginning corner and a county road. It is as follows: "Beginning at the quarter-section corner between sections 9 and 16, in township 2 south, range 2 east of the Willamette meridian, running thence north 87½ degrees west, 11 chains; thence south 13 chains; thence south 65 degrees east, 15.60 chains to the county road; thence north 41½ degrees east, tracing the line of the county road 26.69 chains to the line between sections 9 and 16; thence north 87½ degrees west, tracing the said section line, to the place of beginning, containing 39.76 acres, more or less. The deed from Mrs. Paddock to plaintiff also describes the tract deeded by courses and distances only, and follows the description in the deed to Dedman upon that side. It is as follows: "Beginning at a point 11 chains west of the quarter-section corner between sections 9 and 16, in township 2 south, range 2 east of the Willamette meridian; thence south 13 chains; thence south 65 degrees east, 15.60 chains to the county road leading from Oregon City to Phillip Foster's; thence south 41½ degrees west, tracing the line of said county road about 32.50 chains to the north-westerly corner of a tract of land conveyed by P. L. Campbell to J. Elnora Tompkins, and to the land of C. W. Farrar; thence north

68¼ degrees west, 14 chains to the most northerly corner of the land of said C. W. Farrar; thence north 40 degrees east, 24.75 chains; thence south 60 degrees east, 3.80 chains; thence north 23 chains to the section line between sections 9 and 16; thence east to the place of beginning—containing forty-four acres, more or less.

*W. Carey Johnson*, for Appellant.

The question is, whether, in an action at law, proof may be made as to where the lines of a tract of land were actually run on the ground, or where stakes were set where the course and distance named in the conveyance are erroneous, where all the parties had notice of the true state of the case. The court below held that such proof could not be made. We contend it can. (Civil Code, sec. 845; *Lewis* v. *Lewis*, 4 Or. 177; *Goodman* v. *Myrick*, 5 Id. 65; *Raymond* v. *Coffey*, Id. 132.) That lines actually marked on the ground constitute the survey in all cases, and that parol proof is admissible in reference to the boundaries of land, though such boundaries differ from the courses described in the conveyance, we cite the cases before referred to, and also *McNeal* v. *Dickson*, 10 Am. Dec. 740; *Newman* v. *Foster*, 34 Id. 98; *Hall* v. *Tanner*, 45 Id. 686.

*A. S. Bennett*, for Respondent.

The cases cited by appellant are all cases of government patents, and we think an entirely different rule from that governing the construction of ordinary deeds applies in such cases. To the effect that parol evidence is not admissible to vary the terms of a deed in cases like this, see *Wiswell* v. *Marston*, 54 Me. 270; *Hutchins* v. *Dixon*, 11 Id. 29; *Fratt* v. *Woodward*, 32 Cal. 219; *Dent* v. *Bird*, 8 Pac. Rep. 504 (Cal.).

LORD, J.  It is not claimed that the descriptions in these deeds of the property conveyed by them are vague and uncertain, or ambiguous, or that there can be any difficulty in applying them to locate the property for which they call; but it is conceded that if the descriptions are followed, the strip of land in question was not conveyed to Anna M. Dedman, but is included in the lands conveyed to the plaintiff.  The defendant, however, insists that it was the intention to convey the land in dispute to Anna M. Dedman in the first deed, and from her to the defendant, but that there was an error or mistake in the description, which he contends he ought to be allowed to uncover or prove by parol evidence.

It is difficult to perceive upon what ground this position can be maintained in an action at law.  Clearly, the object of such oral evidence was to import into the deed an intent to transfer a greater quantity of land than the description called for.  And if there ·is any proposition of law well established upon principle and authority, it is, when the description in a deed designates a piece of land as that conveyed, the description cannot be departed from by parol evidence of intent.  Abbott, in his Trial Evidence, page 698, says: "A conveyance of real property is not merely the voluntarily chosen expression of the intention of the parties, and therefore, as between them and those claiming under them, presumably the final definition of their intention, but it is also by statute the only sufficient means of a voluntary transfer; and therefore, an intent to transfer real property cannot be imported into the deed by oral evidence; but oral evidence can only be used as a light to enable the court to read what is in the deed.  Hence, to enable the court to understand what was intended, but not to contradict what is unambiguously expressed, oral evidence is competent to identify, locate, and apply the description."  Nor do the

facts furnish a case of latent ambiguity which could render oral evidence admissible. "Ambiguity," said Gibson, C. J., "is the effect of words that have either no definite sense or else a double one." (*Ellmaker* v. *Ellmaker*, 4 Watts, 90.) A latent ambiguity occurs when the deed or instrument is sufficiently certain and free from ambiguity; but the ambiguity is produced by something extrinsic, or some collateral matter out of the instrument. It is that, said Lord Bacon, "which seemeth certain and without ambiguity for anything that appeareth upon the deed or instrument, but there is some collateral matter out of the deed that breedeth ambiguity." And the illustration given by him is this: "If I grant my manor of S. to J. F. and his heirs, here appeareth no ambiguity at all. But if the truth be that I have the manor both of South S. and North S., this ambiguity is matter of fact, and therefore it shall be holden by averment whether of them it was that the party intended should pass." (See *Cheyney's Case*, 5 Coke, 69.) "A latent ambiguity is where you show that words apply equally to two different things or subject-matters." (*Smith* v. *Jeffreys*, 15 Mee. & W. 501.) The things must be different, and the parties, on account of such difference, have intended one, and not the other. (*Webster* v. *Paul*, 10 Ohio St. 534.) As where the call was for "Swift Creek Swamp," and it appeared that two points were called by the same name, so that it was held competent to show which point was intended by the call for "Swift Creek Swamp." (*Brooks* v. *Brett*, 4 Dev. 481.) Woodbury, J., in *Claremont* v. *Carlton*, 2 N. H. 369, puts a case of latent ambiguity thus: "The identical monument or boundary referred to in a deed is always a subject of parol evidence, and when disputed, is always left to the jury to say what was the actual monument intended. Thus there may be two trees of a similar species, and with similar marks; two similar stakes not far dis-

tant from each other, or two rivers of the same name; and which was intended by the deed would be settled by parol evidence, on the ground that it is a latent ambiguity." So that, although a deed is apparently complete and clear, yet it appears in the course of applying or executing it, that its words are applicable to different things or persons, and there is nothing in it to show which is meant, then the ambiguity is latent, and extrinsic evidence is admissible to show which is meant.

Now, the evidence offered was for the purpose of showing that a measurement from the section line back along the county road a certain distance would make an intersection at another and different point than that designated in the description, and that a line drawn from this point to the next point named would include the land in dispute. The manifest purpose of this evidence is to show that it was the intention of the parties to convey a greater quantity of land than can possibly be obtained by following the description, so as to include the land in dispute. It does not have the effect to give a double meaning to the language used, or to raise an ambiguity as to the line designated, so that when you come to apply it, it is equally applicable to convey a larger quantity, which would embrace the land in dispute, or the quantity described, which excludes it, so as to render an inquiry into such extrinsic facts necessary to ascertain which is meant, or corresponds with the party's intent. Its only effect is to add to, vary, or contradict the language used, and thereby import into the deed by such extrinsic evidence an intention to transfer a greater quantity of land than can be extracted from the language of the description. The fact is, it is not possible, if a piece of land is accurately described by apt language, to increase its size or dimensions without adding to or increasing its boundaries. To take the description as it

is, there is no difficulty in applying it, or locating the property which it describes; but the trouble is, it will not include the land in dispute. Nor could any evidence be introduced which would have the effect to convey an increased quantity of land to that designated and defined by the description, without varying or contradicting the language used. It is true, when the language itself conveys two meanings, to ascertain which one is meant, resort must be had to the rules of construction, aided by a general consideration of the facts and circumstances under which the instrument was made. But when the language itself is not susceptible of a double meaning, nor extrinsic facts can raise a double meaning to the language used, there is no room for construction or extrinsic evidence. " If the parties have used plain and explicit language—if they have fixed a boundary which no man can mistake—courts have nothing to say about it. Construction in that case has no office to perform, and the law makes no intendment." (Tyler on Boundaries, 127.) It is admitted that when permanent or ascertained boundaries are called for by a deed, they are paramount to lines, angles, and surfaces. This is a well-recognized principle of law. (Code, sec. 845, subd. 2.) But it is quite another matter when it is proposed to go outside of the deed entirely, and control it by alleged surveys and measurements, which are not called for or referred to in such deed, and which are inconsistent with a clear, definite, and certain description therein. Assuming that there was a mistake in the description, " that the offer to prove that the course written in said deed as south sixty-five degrees east was a mistake, and should have been written fifty-five degrees east," the remedy is in a court of equity to correct such mistake so as to conform the instrument to the intention of the parties.

The judgment of the court below ought to be affirmed.