Argued March 5, affirmed April 29, argued on rehearing
September 9, reversed and former opinion with-
drawn November 25, 1959

## O'GORMAN *v.* BAKER ET UX

338 P. 2d 638
347 P. 2d 87

*Norman L. Easley,* Portland, argued the cause for appellants. With him on the brief were Seitz, Easley & Whipple, of Portland.

*Dale Jacobs,* Oregon City, argued the cause for respondent. With him on the brief were Charack & Apley, and William Charack, Portland.

Before McALLISTER, Chief Justice, and PERRY, O'CONNELL and CRAWFORD, Justices.

CRAWFORD, J. (Pro Tempore)

Defendants appeal from decree quieting plaintiff's title to approximately five acres of Clackamas County land. Questions involve interpretation of the description in a deed from defendants to plaintiff, executed November 30, 1944, and adverse possession. The single assignment of error is based on entry of the decree. The disputed language reads:

"* * * thence parallel with the southerly line of said road [the Keil & Beckman Road] South 65° 16′ 30″ E. 956.4 feet more or less, to the center of the H. Longcoy County Road # 256, thence northerly in said road to the place of beginning."

It is plaintiff's contention the deed calls for 1386.4 feet in its easterly extension "with the southerly line

of said road * * * on the theory that H. Longcoy County Road No. 256 constitutes a boundary or a "monument" and marks the eastern end of the extended parallel line. Defendants argue the reference to an easterly extension of 956.4 feet controls. The area between these two measurements forms a triangle with its apex to the north, and encloses the five acres with which we are concerned.

■■ The parties are in substantial agreement as to the law. Intent should be ascertained and followed; monuments and boundaries that are permanent and visible are "paramount" over inconsistent measurements but must yield to the latter when the monument or boundary is uncertain; that the actual location of the latter must be established by clear and satisfactory evidence. ORS 93.310(1) and (2); *McDowell v. Carothers,* 75 Or 126, 146 P 800; *King v. Brigham,* 19 Or 560, 25 P 150. It becomes necessary to evaluate the "monument", H. Longcoy County Road No. 256. Admittedly there is no road known by that name. The road is, however, known as Longcoy Road, Linwood Avenue, Marguerite, Webster, and County Road No. 1648. The "curve" is "posted" as Linwood Avenue. This runs north and into Longcoy Road.

In 1925 Longcoy Road was laid out but was never used nor improved, and a portion was vacated in 1939. The parties agree that Road No. 1648 to the north of the junction of Linwood Avenue and the vacated portion of Longcoy Road is also known as Longcoy Road. When Longcoy Road was vacated in 1939 the road was reestablished to "* * * conform to the existing road." So reestablished, it includes Linwood Avenue and Longcoy Road to the north. It is now County Road No. 1648. At the time of the deed, 1944, the only established Longcoy Road was County Road No. 1648

which ran along Linwood Avenue and Longcoy Road to the north thereof. Naomi Cook, clerk-typist in the Road Department, testified Road No. 1648 takes in the Linwood Avenue curve. Ralph Milln, Clackamas County surveyor, testified that Linwood Avenue was also known as Longcoy, Marguerite and Webster. Also, "Well, we have always considered it as the Longcoy Road, whether it's official or not."

■ Longcoy Road, also known as Linwood Avenue, is a permanent, visible and ascertained boundary, a definite, used and established road. The "vacated" Longcoy Road fails to meet any of the requirements as to monuments and boundaries, from which it follows the evidentiary rule of ORS 93.310(1) and (2) establishes the monument and boundary Linwood Avenue-Longcoy Road as paramount unless "other sufficient circumstances" impel a conclusion to the contrary. *Hale v. Cottle,* 21 Or 580, 28 P 901; *Baker County v. Benson,* 40 Or 207, 66 P 815. As stated above, on vacation of Longcoy Road the road was reestablished as County Road No. 1648. And such it was at the time of the conveyance.

Defendants' main reliance is the eastern extension reading of 956.4 feet which coincides exactly with the center of the vacated Longcoy Road. Ground pipes correspond. Defendants argue "It is obvious that the words 'as vacated' were omitted from the description in the deed. * * *"

■ Defendant Fred C. Baker testified he did not convey the five-acre tract because it more or less "squared" up his property. Plaintiff testified she purchased 40 acres at $150 an acre and gave her check for $6,500, which sum included a small additional parcel, to which $500 of the purchase price was allotted; that defendant indicated the 40 acres he was selling

while the parties were on the ground. The original tract acquired by Baker contained 140 acres, divided by a road into two pieces, 100 acres on the east side of the Longcoy Road (also known as Linwood Avenue) and 40 acres on the west side. A realistic and normal division would suggest defendants intended to retain the east side portion while selling to plaintiff the 40 acres on the west side. The "other circumstances" are insufficient to overcome the evidence supplied by the boundary and monument but to the contrary support it. The monument is paramount.

■ The remaining question is that of adverse possession. Neither plaintiff nor defendants physically occupied the five-acre tract and each exercised certain acts of dominion over it; repaired fences, posted no trespassing signs, rented the property to others, rode horses over it. There is evidence that defendants pastured horses on the tract, erected a new fence in 1955, after this suit was filed, and paid all taxes. It also appears plaintiff received the rent of $80 for the 40 acres, terminated the rental agreement and re-let, cut brush, built trails, changed gates, and in 1953 filed suit for specific performance, later dismissed, involving the land in question. Plaintiff testified the taxes were paid covering the five acres without her knowledge. It thus appears the requirements of adverse possession have not been established. *Keeney v. Pilot Rock Lbr. Co. et al.*, 206 Or 156, 291 P2d 735; *Reeves v. Porta*, 173 Or 147, 144 P2d 493; *McCully v. Heaverne*, 82 Or 650, 160 P 1166, 162 P 863.

We find no error. Affirmed.

PERRY, J., dissenting.

I am unable to agree with the opinion of the majority.

The plaintiff, in her petition, seeks to quiet title to real property described in her complaint, but the only portion in issue is that set forth in the deed from defendants to plaintiff, dated November 30, 1944. This deed, in so far as is material to this case, reads as follows:

"* * * thence south in the center of said road 1161.40 feet to a point 20.00 feet north of the southerly line of Kiel and Beckman County Road # 313; thence parallel with the southerly line of said road (Kiel and Beckman Road) South 65 degrees, 16' 30" E. 956.4 feet more or less, to the center of the H. Longcoy County Road # 256, thence northerly in said road to the place of beginning."

That the problem may be made more clear, I am setting forth a rough drawing of the land in dispute:

It must be kept in mind at all times that this is not a suit to reform the deed to comply with the former agreement of the parties, for there are no allegations in the complaint sufficient to support such a suit. *De Tweede v. Barnett Estate,* 160 Or 406, 85 P2d 361; *Meier v. Kelly,* 20 Or 86, 25 P 73. As in the case of *Meier v. Kelly,* supra, p. 94, "* * * The complaint in this case contains no allegation of a mistake in the mortgage [here deed], but is drawn up on the theory that there is no mistake, but an uncertain description."

That this is true is clearly established by the fact that the plaintiff, in another original suit, alleged that the land here in question was not conveyed as agreed and sought to recover damages for breach of the contract. She later abandoned this theory by an amended complaint seeking to have the deed reformed, but this suit was never tried. This being true, plaintiff's deed being unambiguous upon its face, unless

a latent ambiguity arises, we cannot change or vary the description actually contained in the deed, although it may appear that it is not the description intended to be inserted therein.

"* * * Where the terms used in the description contained in a deed or mortgage are clear and intelligible, the court will put a construction on the terms, and parol evidence is not admissible to control the legal effect of such description. * * * but when the description is uncertain and ambiguous, parol evidence will be admissible to fit the description to the thing described, but not to add to or change the words of the description." *Meier v. Kelly,* 20 Or 86, 93, supra.

It must also be kept in mind that parol evidence may be used to explain an ambiguity, but it is never proper for such evidence to be used to create one. In my opinion, this is exactly what the majority's opinion does.

The oral evidence offered by the plaintiff is to the effect that Linwood Avenue County Road No. 1648 was sometimes called by people living in that vicinity Longcoy Road. From this premise they argue that the parties intended as a monument in the deed Linwood Avenue County Road No. 1648. Thus, they change the wording of the deed and create an ambiguity where none, in fact, exists. In other words, they create a boundary line not mentioned in the deed.

The undisputed facts in this case show that there had been designated and existing at the time the conveyance was executed H. Longcoy Road, County Road No. 1256, that this road was open and used for travel from the north to where it intersected Linwood Avenue County Road 1648, that sometime prior to 1939 an extension of Longcoy Road, County Road No. 1256, was surveyed and platted in a southerly direction intersecting the Kiel-Beckman Road. Though this extension of the road was never opened, and the right of way abandoned in 1939, it was shown upon the county plats as H. Longcoy County Road No. 1256, and the measurement of 956.4 comes exactly to the center line of the survey of this abandoned right of way.

I place no significance upon the fact that the deed describes H. Longcoy County Road as No. 256 instead of No. 1256, as it seems clear that this was merely a typographical error.

The only possible defect in the conveyance arises from the fact that at the time of the conveyance there was no extension of H. Longcoy Road 1256 then in existence. From this it seems they argue that there must be an ambiguity because there is another road in the vicinity, not Longcoy Road but sometimes called by that name, and, therefore, extrinsic evidence is proper to gain the true intent of the grantor. This may be

possible where the description used in the deed describes equally well both monuments, but not otherwise. Thompson on Real Property, Perm Ed, Vol 6, p 455, § 3281.

> "A latent ambiguity occurs when the deed or other instrument appears sufficiently certain, free from ambiguity, but the ambiguity is produced by something extrinsic, or some collateral matter out of the instrument. Where a description is apparently clear and complete, yet when it is applied to the land it appears that the words are applicable to different things, and there is nothing in the deed to show which is meant, * * *." 6 Thompson on Real Property 460, § 3283.

In *Holcomb v. Mooney,* 13 Or 503, 507, 11 P 274, it is stated:

> "* * * 'A latent ambiguity is where you show that words apply equally to two different things or subject-matters.'"

If these definitions of a latent ambiguity are correct, the fallacy of the majority is at once apparent. First, the plats offered in evidence show the center line of an unopened road exactly 956.4 feet east of the south corner boundary line described thereon as H. Longcoy Road 1256; and, secondly, it must be admitted that no H. Longcoy Road ever officially existed east of the 956.4 feet marking the measured terminus of the description in the deed.

The majority would then, it seems to me, create by oral testimony an ambiguity which does not appear from the language used in the deed, or when the description is applied to the county plat. In other words, they say the grantor did not intend to describe H. Longcoy County Road 1256 as platted and abandoned, but intended to describe a road that some people call Longcoy Road, though the road referred to was platted

and named thereon as Linwood Avenue County Road 1648.

It seems to me there is no ambiguity, either latent or patent, in the conveyance.

The statute set forth and relied upon by the majority, ORS 93.310(2), which reads, "When permanent and visible or ascertained boundaries or monuments are inconsistent with the measurement, either of lines, angles or surfaces, the boundaries or monuments are paramount" cannot be used to create an ambiguity.

This is merely a rule of construction to dissolve ambiguities, and is applicable when there is no question as to the monument intended. It is based upon the premise that a monument will afford greater certainty as to the boundary line than will be the measured distance which is subject to man-made error. 11 CJS 607, Boundaries § 50.

Also, before we may consider that there is a latent ambiguity because the grantor could have intended to include Linwood Avenue County Road No. 1648 as the boundary, since it was sometimes called Longcoy Road, we must first dispose of another rule of interpretation.

"* * * While the rule of law is as heretofore stated, that actual location of the lines and monuments on the ground will control over courses and distances, we think that where it is claimed that such lines and monuments do not agree with the courses and distances, the evidence of their actual location should be so clear and satisfactory as to establish that fact to the entire satisfaction of the court and to place beyond question the actual location of the line or monument."

*King et al. v. Brigham et al.,* 19 Or 560, 569, 25 P 150.

In this case, assuming the premise of the majority that we have an uncertainty as to the monument in-

tended, we do not have a conflict between an ascertained monument and a stated distance, but only an uncertainty as to the monument intended.

Under such circumstances, that which is certain should control; that is, where there is a conflict as to the monument intended, and one corresponds with the courses and distances stated and the other does not, the one that corresponds shall prevail. Patton on Titles, Vol 1, § 150.

This is the holding of the following cases which appear to be all that have reached the courts dealing with this particular matter. In *Post v. Wilkes-Barre Connecting R. R. Co.*, 286 Pa 273, 133 A 378, the deed described a call to the main channel of a river which in fact had two channels. The court, in deciding this case, held that the conveyance was intended to convey to the first channel, since this description would coincide with the quantity stated to be involved and the course and distance given in the deed, despite the fact that it was established that the second channel was in fact the main channel. The holding, in effect, was that course and distance may be used as guides to find natural objects or determine in case of doubt which object was intended.

In *Gilbert v. Parrott*, 168 Ky 599, 182 SW 859, the court followed the above rule, stating that it would not allow parol evidence to vary a beginning point when it could be determined by the use of distances, since the position of the monument was ambiguous. In *Davenport v. Bass*, 137 Tex 248, 256, 153 SW2d 471, where there was an ambiguity regarding monuments, the court said:

> "* * * we think it a safe rule that if there be calls for two or more objects, as, for instance, different roads, and it becomes necessary to adopt

one or another of said calls, that one will be adopted which most nearly conforms to the courses and distances * * *."

In *Zeibold v. Foster,* 118 Mo 349, 355, 24 SW 155, the court there said:

"* * * we have two fixed artificial monuments, and both cannot control * * *. One is of no higher value as a monument than the other."

The court thereupon decided that the one which coincided with the course and distance should prevail. To the same effect see, also, *Hostetter v. Los Angeles Terminal R. Co.,* 108 Cal 38, 41 P 330; 11 CJS 603, Boundaries § 50; 6 Thompson on Real Property 532, § 3333.

It appears from the majority opinion that this rule of law just discussed is brushed aside, because they are of the opinion that at the time the deed was executed the extension of H. Longcoy Road No. 1256 had been abandoned by the county and there was no visible road in the vicinity other than Linwood Avenue County Road No. 1648, sometimes called Longcoy Road.

As I construe ORS 93.310(2), ascertained boundaries are of equal stature with permanent and visible monuments.

The undisputed evidence in this case is that the boundaries of the extended portion of H. Longcoy County Road 1256 were surveyed and platted. This, it seems to me, is an ascertained boundary of a road and, having once been ascertained, the mere fact of vacation should not affect its establishment as a call to an ascertained point.

To reach the result of the majority, it seems to me we are totally ignoring the substantive rule of law that parol evidence may not be used to vary the terms of a written instrument.

In *Holcomb v. Mooney,* 13 Or 503, 506, supra, we said:

"* * * And if there is any proposition of law well established upon principle and authority, it is, when the description in a deed designates a piece of land as that conveyed, the description cannot be departed from by parol evidence of intent."

In *Meier v. Kelly,* 20 Or 86, 93, supra, we said:

"Where the terms used in the description contained in a deed or mortgage are clear and intelligible, the court will put a construction on the terms, * * *; but when the description is uncertain and ambiguous, parol evidence will be admissible to fit the description to the thing described, *but not to add to or change the words of the description.*" (Italics supplied)

Cited with approval in *Harvey v. Campbell,* 107 Or 373, 209 P 107, 214 P 348.

Again, in *Hyland v. Oregon Agricultural Co.,* 111 Or 212, 216, 225 P 728, we approved this statement:

" '* * * The test of the admissibility of evidence *dehors* the deed is involved in the question whether it tends to so explain some descriptive word or expression contained in it, as to show that such phraseology, otherwise of doubtful import, contains in itself, with such explanation an identification of the land conveyed.' The authors then say: 'The rule is founded on the maxim *"Id certum est, quod certum reddi potest." '* * * *"

We also in this case on p. 217 said:

"It is a substantive rule of law that as between the original parties to a contract and their privies, in the absence of fraud, mistake in fact or illegality in the subject matter of the contract, where the parties have entered into a contract which is complete in itself and which has been reduced to writing, it is 'conclusively presumed that the whole en-

gagement of the parties, and the extent and manner of their undertaking, was reduced to writing'; and that parol evidence, that is, evidence extrinsic to the writing itself, is inadmissible for the purpose of adding to, subtracting from, altering, varying or contradicting the terms of the written contract or to control its legal operation or effect, and that all oral negotiations or stipulations between the parties preceding or accompanying the execution of the written contract are regarded as merged in it: 1 Greenl. Ev. (16 ed.), § 275; *Looney v. Rankin,* 15 Or 617 (16 Pac. 660); *Tallmadge v. Hooper,* 37 Or 503 (61 Pac 349, 1127); *Sutherlin v. Bloomer,* 50 Or 398 (93 Pac. 135); *Gill v. Columbia Contract Co.,* 70 Or. 278 (141 Pac. 163); Interior Warehouse Co. v. Dunn, 80 Or. 528 (157 Pac. 806); *Wallace v. Oregon Engineering Co.,* 90 Or. 31 (174 Pac. 156, 175 Pac. 445)."

Many more cases of similar import could be cited, but these amply support the proposition that parol evidence could only be used to show that there had been at one time an established boundary known as H. Longcoy County Road No. 1256, and cannot be used to show that the parties intended some other boundary line.

For the above reasons I must dissent.

**ON REHEARING**

*Frank E. Nash*, Portland, and *Mark C. McClanahan*, Portland, argued the cause for appellants. With them on the briefs were Seitz, Easley & Whipple, Norman L. Easley, and King, Miller, Anderson, Nash & Yerke, Portland.

*John C. Caldwell*, Oregon City, argued the cause for respondent. With him on the briefs were William Charack, Milwaukie, Uney and Jacobs, and Dale Jacobs, Oregon City.

PERRY, J.

The plaintiff commenced this suit to quiet her title in and to the following described real estate:

"Part of the J. D. Garrett and wife D. L. C. in Sections 31 and 32, and a part of Section 32, T. 1 S., R. 2 E., and a part of Section 5, T. 2 S., R. 2 E., of the W. M., described as:

"Beginning at an iron pipe in the Longcoy Road at the southwest corner of a tract of land conveyed to Parry P. Tisch and Lynn G. Tisch, his wife, containing 20 acres, in book 178 of deeds at page 248 and 249, records of Clackamas County, Oregon;

thence from said beginning point run north 500.00 feet, more or less, to an iron pipe at the southeast corner of land described in book 193 of deeds, page 362, thence westerly along the southerly line of said tract 359.88 feet to the southwest corner thereof; thence west 30.00 feet, more or less, to the easterly line of a tract of land in book 197 of deeds at page 10; thence southerly along the easterly side of said tract to the southeast corner thereof; thence westerly along the southerly line of said tract 328.56 feet, to the easterly line of tract of land in book 153 of deeds, page 159; thence south along the east line of said tract 132.27 feet to the southeast corner thereof which is also the northeast corner of a tract of land in book 235 of deeds, page 44, all records of Clackamas County, Oregon; thence southerly along the easterly line of said tract 200.00 feet to the southeast corner thereof; thence westerly along the southerly line of said tract 328.56 feet to the southwest corner thereof; thence continue west 15.00 feet, more or less, to the center of the County road; thence south in the center of said road 1161.40 feet to a point 20.00 feet north of the southerly line of Kiel and Beckman County Road #313; thence parallel with the southerly line of said road South 65° 16′ 30″ East 1386.4 feet more or less, to the center line of County Road #1648; thence Northerly, along the center line of said road #1648, 1300 feet, more or less, to the initial point of said road #1648; thence North 00° 48′ East, along the center line of Longcoy Road 442.53 feet to the place of beginning.''

No dispute exists between the parties except as to a triangular portion of land situated in the Southeast corner of said tract, consisting of approximately 5 acres.

The plaintiff's claim of title rests upon two propositions, (1) adverse possession, and (2) interpretation of the deed of conveyance from the defendants to the plaintiff.

The trial court entered a decree for the plaintiff

and the defendants appealed. On April 29, 1959, by opinion we affirmed the trial court. The defendants petitioned for a rehearing which was granted and the matter is again before us.

The trial court found the evidence offered by the plaintiff was insufficient to establish a title in her by adverse possession and our examination of the record convinces us that the judgment of the trial court upon that issue was correct.

The sole issue then is a matter of interpreting the deed of conveyance executed by the defendants and delivered to the plaintiff on November 30, 1944. The description in this deed is as follows:

"Part of the J. D. Garrett and wife D. L. C. in Sections 31 and 32, in T. 1 S. R. 2 E. of W. M., described as:

"Beginning at an iron pipe in the Longcoy Road at the southwest corner of a tract of land conveyed to Parry P. Tisch and Lynn G. Tisch, his wife, containing 20 acres, in Book 178 of Deeds at page 248 and 249, records of Clackamas County, Oregon; thence from said beginning point run North 500.00 feet, more or less, to an iron pipe at the southeast corner of land described in book 193 of deeds, page 362, thence westerly along the southerly line of said tract 359.88 feet to the southwest corner thereof; thence west 30.00 feet, more or less, to the easterly line of a tract of land in book 197 of deeds at page 10; thence southerly along the easterly side of said tract to the southeast corner thereof; thence westerly along the southerly line of said tract 328.56 feet, to the easterly line of tract of land in book 153 of deeds page 159; thence south along the east line of said tract 132.27 feet to the southeast corner thereof which is also the northeast corner of a tract of land in book 235 of deeds page 44, all records of Clackamas County, Oregon; thence southerly along the easterly line of said tract 200.00 feet to the southeast corner thereof; thence westerly along the

southerly line of said tract 328.56 feet to the southwest corner thereof; thence continue west 15.00 feet, more or less, to the center of the County road; thence south in the center of said road 1161.40 feet to a point 20.00 feet north of the southerly line of Kiel & Beckman County Road #313; thence parallel with the southerly line of said road South 65° 16′ 30″ E. 956.4 feet more or less, to the center of the H. Longcoy County Road #256, thence northerly in said road to the place of beginning."

For a clearer understanding of the problem we set forth a survey which clearly shows the land in dispute.

From a comparison of the description of the real property as set out in plaintiff's complaint and the description in the deed, it is disclosed that the dispute resolves itself in a question as to the proper terminus of that portion of the description described as "thence parallel with the southerly line of said road [Kiel and

Beckman Road] South 65° 16′ 30″ E. 956.4 feet more or less to the center of the H. Longcoy County Road #256."

■ It must be kept in mind that this is not a suit to reform the deed to comply with an agreement of the parties, for there are no allegations in the complaint to support such a suit. *DeTweede v. Barnett Estate*, 160 Or 406, 85 P2d 361; *Meier v. Kelly*, 20 Or 86, 25 P 73. Likewise, the evidence offered would not sustain sufficient allegations.

■ In construing a deed, it is the duty of the court to give effect to the intentions of the parties. *United States Nat. Bank v. Miller et al.*, 122 Or 285, 258 P 205, 58 ALR 339; *Dutton v. Buckley*, 116 Or 661, 242 P 626. And this intention is to be gathered from the language of the instrument and the consideration of the circumstances at the time of the execution, ORS 42.220, for prior or contemporaneous oral agreements, even though received without objection, may not be considered except when the language used is equally susceptible of different meanings. ORS 41.740; ORS 42.220; *Heimbigner et al. v. U.S. Natl. Bank*, 190 Or 592, 227 P2d 827; *Weniger v. Ripley*, 134 Or 265, 293 P 425; *Holcomb v. Mooney*, 13 Or 503, 11 P 274.

It is the contention of the plaintiff that the use of the words "H. Longcoy County Road #256" by the grantor as the terminus of the southerly line of the description, when in fact there is no visible road, makes the conveyance so ambiguous that extrinsic evidence is admissible to show that a road visible in that general vicinity, sometimes called H. Longcoy Road, was the road intended to mark the terminus of the southerly line. Then to avoid the effect of the stated distance to an H. Longcoy County Road #256, they rely upon a rule of construction set out in ORS 93.310(2) as follows:

"When permanent and visible or ascertained

boundaries or monuments are inconsistent with the measurement, either of lines, angles or surfaces, the boundaries or monuments are paramount."

If we are to accept this contention, then we must first find from the language of the conveyance that it was the expressed intention of the grantor that an open, used and visible road should constitute the terminus, or the language used to describe the terminus is so obscure that extrinsic evidence is necessary to disclose the intention of the parties. In *Meier v. Kelly*, 20 Or 86, 25 P 73, at page 93, we said:

"* * * Where the terms used in the description contained in a deed or mortgage are clear and intelligible, the court will put a construction on the terms, * * *; but when the description is uncertain and ambiguous, *parol evidence will be admissible to fit the description to the thing described, but not to add to or change the words of the description.*" (Italics ours)

Again, in *Hyland v. Oregon Agricultural Co.*, 111 Or 212, 216, 225 P 728, we approved this statement:

" '* * * The test of the admissibility of evidence *dehors* the deed is involved in the question whether it tends to so explain some descriptive word or expression contained in it, as to show that such phraseology, otherwise of doubtful import, contains in itself, with such explanation, an identification of the land conveyed.' The authors then say: 'The rule is founded on the maxim *"Id certum est, quod certum reddi potest."* ' * * *"

There is nothing in the particular language used to describe the southern boundary of this tract which would indicate that the road described as the terminus was either open, used and visible, or abandoned, unused and not visible. Any uncertainty of mind arises only when going near the premises there is found only one

visible and used roadway near the southeast corner of the tract of land.

■ Therefore, this evidence offered by the plaintiff becomes admissible and may be considered only if there is found uncertainty as to what is intended by the language used in the deed, for the deed appears in all particulars regular upon its face. ORS 41.740; ORS 42.220; *Weniger v. Ripley*, supra.

That the description does not create a latent ambiguity is clearly demonstrated.

"A latent ambiguity occurs when the deed or instrument is sufficiently certain and free from ambiguity; but the ambiguity is produced by something extrinsic, or some collateral matter out of the instrument. It is that, said Lord Bacon, 'which seemeth certain and without ambiguity for anything that appeareth upon the deed or instrument, but there is some collateral matter out of the deed that breedeth ambiguity.' And the illustration given by him is this: 'If I grant my manor of S. to J. F. and his heirs, here appeareth no ambiguity at all. But if the truth be that I have the manor both of South S. and North S., this ambiguity is matter of fact, and therefore it shall be holden by averment whether of them it was that the party intended should pass.' (See Cheyney's Case, 5 Coke, 69.) 'A latent ambiguity is where you show that words apply equally to two different things or subject-matters.' (Smith v. Jeffreys, 15 Mee. & W. 501.) The things must be different, and the parties, on account of such difference, have intended one, and not the other. (Webster v. Paul, 10 Ohio St. 534.) As where the call was for 'Swift Creek Swamp,' and it appeared that two points were called by the same name, so that it was held competent to show which point was intended by the call for 'Swift Creek Swamp.' (Brooks v. Brett, 4 Dev. 481.) Woodbury, J., in Claremont v. Carlton, 2 N.H. 369, puts a case of latent ambiguity thus: 'The identical monument or boundary referred to in a deed is always a subject

of parol evidence, and when disputed is always left to the jury to say what was the actual monument intended. Thus there may be two trees of a similar species, and with similar marks; two similar stakes not far distant from each other, or two rivers of the same name; and which was intended by the deed would be settled by parol evidence, on the ground that it is a latent ambiguity.' So that, although a deed is apparently complete and clear, yet it appears in the course of applying or executing it, that its words are applicable to different things or persons, and there is nothing in it to show which is meant, then the ambiguity is latent, and extrinsic evidence is admissible to show which is meant." *Holcomb v. Mooney*, 13 Or 503, 507, 11 P 274.

In 6 Thompson on Real Property 460, § 3283, it is stated:

"A latent ambiguity occurs when the deed or other instrument appears sufficiently certain, free from ambiguity, but the ambiguity is produced by something extrinsic, or some collateral matter out of the instrument. Where a description is apparently clear and complete, yet when it is applied to the land it appears that the words are applicable to different things, and there is nothing in the deed to show which is meant, * * *."

It is clear, as is later pointed out, that the language of the deed points out the object described as the terminus so that it cannot be said that the language used may describe equally well both objects.

■ In construing a deed, the courts must construe the instrument as a whole and effect be given, if possible, to each of the grantor's expressions therein to determine the intention of the parties. *Palmateer et al. v. Reid*, 121 Or 179, 254 P 359; 26 CJS 814-822, Deeds §§ 83 and 84.

The description of the granted land discloses that it is a portion of the J. D. Garrett and wife Donation Land Claim No. 38.

The evidence discloses, and an examination of the map hereinbefore set out will show, that the eastern boundary of the J. D. Garrett and wife Donation Land Claim lies but a short distance east of the vacated H. Longcoy County Road #1256. To extend the southern boundary of the tract, as sought by the plaintiff, to the visible, and also known as, H. Longcoy Road would be to ignore the grantors' use of the words "Part of the J. D. Garrett and wife D.L.C. in sections 31 and 32, in T. 1 S. R. 2 E. of W.M.," for the road also known as H. Longcoy Road lies east of the eastern boundary of the Land Donation Claim.

There is also used in the deed of conveyance the call distance of "956.4 feet more or less." This call must be materially ignored if the parties intended the eastern terminus of the south line to be the road also called H. Longcoy Road, for to reach that point the distance would not be 956.4 feet, but 1386.4 feet.

It is also to be noted that the parties not only describe the terminus of the southerly line alone as H. Longcoy Road, but they also use the designation "County Road #256." The road also called H. Longcoy Road is designated as "County Road #1648."

The evidence discloses that there is in this vicinity no "County Road #256," but there is a "County Road #1256," which is an open, used and visible road lying north of the 956.4 feet measurement described as the point of terminus. The evidence also discloses that this County Road #1256 was officially surveyed and platted down to and beyond the point of terminus described in the conveyance, although it was never opened or improved and was vacated about 5 years prior to the execution of the deed. It seems quite clear that through a typographical error alone the "1" was omitted when describing the county road, for the three following numbers are identical with that of County

Road #1256. That this was a mere typographical error is also indicated from the fact that there is no contention but that the easterly boundary of the granted land is Longcoy County Road #1256, at least to the point where it connects from the north with County Road #1648.

It thus appears, if we are to accept the plaintiff's contentions that the eastern terminus of the southerly line was to be an open, used and visible roadway, we are required to reject the language of the conveyance in these four particulars: (1) That the land described is a part of the J. D. Garrett and wife Donation Land Claim; (2) that the distance along the southern boundary is 956.4 feet; (3) that the road was H. Longcoy County Road as platted; and (4) that this road is County Road #1256.

We must also ignore this language in the conveyance if we are to say that the language used would "apply equally to two different things or subject matters," for none of this language could possibly be construed to describe a roadway that lies outside the J. D. Garrett and wife Donation Land Claim, is far more than 956.4 feet east of the southwest corner, and is known officially as County Road #1648.

■ We are of the opinion that the language of the conveyance clearly expresses the intention of the parties,—that the easterly terminus of the southerly boundary of the land described is the abandoned roadway officially known as H. Longcoy County Road #1256; for if there is any language of doubtful import, the language of the deed removes that doubt and the evidence dehors the deed confirms this conclusion.

Our former opinion is withdrawn, and the judgment of the trial court is reversed.

Neither party shall recover costs in this Court.

O'CONNELL, J., dissenting.

A careful reading of the transcript in this case convinces me that our original decision was correct and that we should adhere to our former opinion.

If we disregard the evidence revealing the intention of the parties, there is no doubt that the deed would convey only the land up to the vacated road. It is not difficult to understand how the deed might so describe the property in spite of the intention of the parties to convey the land up to the traveled road popularly known as Longcoy road. The deed was drawn by Mr. Baker's attorney, a Mr. Christensen, now deceased. It appears that he drafted the description by reference to a map of the particular area. The evidence shows that the vacated portion of Longcoy road running through the property in question continued to be designated as Longcoy road on the maps of this area in spite of the fact that it was vacated. However, the testimony is clear that this part of the road was popularly known as Longcoy road. That part of the traveled road popularly known as Longcoy road which plaintiff claims as her boundary was not designated on the map by that name. The county surveyor stated, "we have always considered it as the Longcoy Road, whether it's official or not." It is very likely that if Christensen was unaware of the ambiguity in the term "Longcoy road," he would have drawn the deed as it was drawn, whether the parties intended the term to refer to the traveled road or the vacated road.

If the evidence shows that the traveled road was intended by the parties, we are entitled to construe the term "Longcoy road" in the deed to reflect their intention in spite of the designation of a footage consistent with the distance to a road not intended to be a monument.

Now, if this were a case in which the grantor and grantee were dealing at arm's length, it might be appropriate to dispose of plaintiff's claim by applying the maxim caveat emptor, letting the loss fall on plaintiff because of her inattention to the language used in the deed. But this is not such a case; the plaintiff and defendant here did not deal at arm's length—the defendant stood in a fiduciary relation to the plaintiff. The evidence is absolutely clear on this point. One of the weaknesses in the majority opinion is that it fails to see that the conveyance was made by a fiduciary to the person for whom he was purportedly acting. An excerpt from the defendant Fred Baker's own testimony proves the relationship of trust.

"Q And had you represented Mrs. Deane [later Mrs. O'Gorman] and managed her affairs after Mr. Deane passed away?

"A Yes, Mr. Deane called me. I talked to him on the telephone, and his affairs were in rather bad shape, and he asked me to help straighten them out, which I agreed to do.

"Q And you took care of Mrs. Deane's affairs?
"A I assisted her.

"Q Did you advise her?
"A Yes, on occasions I did.

"Q Did you discuss with Mr. Deane prior to his death about this particular property, the acquisition of it?
"A No, sir.

"Q Did you discuss it with Mrs. Deane?
"A Mr. Deane?

"Q Yes, Mr. Deane.
"A Not this particular piece of property, no.

"Q Well, I mean, did you discuss the whole parcel of property that you acquired prior—
"A I remember Mr. Deane saying that any property that we acquired in the neighborhood if

we wanted to get rid of it, to give him first chance to buy it; he'd like to have more property in that area.

"Q Did you discuss this property with Mrs. Deane after Mr. Deane passed away and prior to your acquiring it? Did you have any discussion with her?

"A I think at about the time I acquired it, because I had made that commitment to Mr. Deane, and—

"Q Did you indicate the parcel that you would retain after you would acquire it, and the parcel that Mrs. Deane was to have?

"A Yes, sir.

"Q Did you show her the parcel?

"A I didn't have—I had no way of exactly what it was. All I had was the maps, which I showed Mrs. Deane—the map, had it in her office.

"Q Did you ever go along the road and show her the boundaries along the road?

"A I might have at some later date. There was a road; they were neighbors, and it's very possible."

He further testified as follows with respect to his fiduciary position:

"Q Well, didn't you suggest to Mrs. Deane that she have Mr. Christensen look after her affairs?

"A It's possible that I did.

"Q Well, when you were managing Mrs. Deane's affairs, after the death of Mr. Deane, didn't you retain, that is, Mr. Christensen as counsel for Mrs. Deane in the estate and in transactions involving sales?

"A I know Mrs. Deane did retain Mr. Christensen as her counsel.

"Q Was it through your suggestion?

"A It might have been.

\* \* \* \* \*

"Q Mr. Baker, now, in executing the deed to Mrs. Deane at the time, did you have that drawn up by Mr. Christensen, or did you draw that up yourself?

"A Mr. Christensen drew the deed.

"Q He drew the deed. Now, at the same time, Mr. Christensen was also representing Mrs. Deane?

"A Yes, he was."

Plaintiff testified as follows:

"Q Now, at this time, and during this period that we are discussing with respect to acquiring this property, was Mr. Baker representing you in handling your affairs?

"A Yes, he was.

"Q And what did he tell you, if anything, with respect to worrying about your affairs, business affairs?

"A Well, I would ask questions once in a while— I'm no business woman; I have no business training at all—I would ask questions once in a while and he would say, 'Well, now, we'll see; you don't worry your pretty head about that. I will tend to that, and then we will go over it.'

"Q Did Mr. Christensen ever discuss any business affairs with you either with respect to this property—

"A No, not that I remember.

"Q If he did, did Mr. Christensen call you with respect to any business matters?

"A Well, often, you know, in different things.

"Q Would you answer him or would you refer him to Mr. Baker?

"A Well, I'd always refer him to Mr. Baker, because it seemed to be Fred's decision regardless. You must remember that I thought Mr. Baker was one of the best friends I had. He and his wife—they were our closest neighbors.

\*   \*   \*   \*   \*

"Q Now, Mrs. O'Gorman, did you and Mr. Baker have other joint ventures—I mean, with respect to acquisition of property besides this?

"A Yes, we do."

Plaintiff was led to believe that Mr. Baker was acting in her interest. As a result, she not only relied upon him to deal fairly with her, but she was also induced to rely upon an attorney whose loyalty was at best divided. Under such circumstances we should resolve all doubts against Mr. Baker if plaintiff was justifiably misled by the ambiguous description. The testimony reveals that she was not only misled but that Mr. Baker's conduct was a substantial factor in misleading her. She testified that she and Baker drove "around" the property and that Baker described it as including all of the land up to the fence along Linwood avenue. She testified:

"A He told me what good roads I had all the way around my piece of property, good county roads, and that if I ever wanted to subdivide it that other road that came down there, Wichita, it would be so easy to cut it right straight in half and subdivide it.

\* \* \* \* \*

"Q What was any conversation that you had with him in respect to this parcel in relation to the other parcel?

"A He asked me how much I wanted. \* \* \* And I said, 'Well, how much is in this piece?' And he said, 'around 40 acres,' and I said, 'Is that, then,—is that piece on the other side of Linwood'—that would be in front of his house. I don't know what—

"Q That would be east?

"A East. 'Maybe you take that and I take this one, because it's at the entrance practically of my guest house.' We were buying it to protect our homes. We had a lot of money in our homes out there and that's why we bought it."

The parcel in dispute was not separately fenced or marked off from the land to the west of the vacated road. The fence enclosing the property ran along Linwood avenue to the east and along Railroad avenue to the south. It would be reasonable for plaintiff to assume that the entire parcel, fenced as it was and bounded by traveled roads, constituted the subject matter of the conveyance.

The parcel in dispute more naturally formed a unit with plaintiff's adjoining land than it would with defendants' land on the other side of Linwood avenue. Baker attempted to answer this by testifying as follows:

"Q  Now, then, when you deeded the property west of Longcoy Road [referring here to the vacated road]—that is, the big piece, to Mrs. Deane, why was it that you did not include the property west of Linwood Road?

"A  Well, there was several reasons. This old line, this Longcoy Road line more or less squared up my property, didn't take a corner out of it. I did want to do this. We bought the property to protect our home which is right here (indicating).

*    *    *    *    *

"Q  Yes. Now, then, why is it that you wanted the piece of property marked B?

"A  Well, we bought it for protection. I was afraid that sometime maybe when I bought the whole tract, I was afraid that there may be some housing project of cheaper houses, and we have a very nice home, and we wanted to protect it. I didn't deed this piece. If it ever changed hands with Mrs. Deane, if I had deeded it to her, there was a hazard there that I might get a filling station or something across from my property, and thirdly, I still think, and there was a movement on not very long ago—it's very

difficult to get in here on Lake Road at the present time, because you have to—"

At another point in his testimony, he said:

"A  Well, it cut a nasty corner out of my property, and when we discussed the map, my property was squared up, and the Longcoy Road is a road that will eventually, I think, go through.

"Q  In view of its vacation, now?

"A  Yes, sir. I think it will eventually go through. I think that will eventually be the road that will connect with Rusk Road and Lake Road; it's a logical place for the road to be."

Although this testimony would indicate that Baker regarded the vacated road site as a valuable appurtenance to his land, there was other testimony that is not entirely consistent with this idea. The following testimony reveals this latter attitude.

"Q  Did you ever indicate that there was a misunderstanding between you and Mrs. O'Gorman as to the property that she was to have obtained from you?

"A  I don't remember; no, sir.

"Q  You could have, though?

"A  Well,—

"Q  If I were to indicate that you did so in a letter to Mr. Christensen, would that be correct?

"A  That I—oh, yes, if you had a letter. As a matter of fact, years and years and years later when this thing did come up—and I am not wishing to have any trouble with Mrs. Deane, and I thought, as I said to Mr. Christensen, I think in that letter that I might consider it, if it would be used strictly for residential purposes, that I might deed that property. I was leaning over backwards. I didn't want to have any trouble with Mrs. Deane.

\*   \*   \*   \*   \*

"Q  Wasn't that the understanding, at the time you acquired the property that that was the purpose of acquiring it, that you would maintain it, both of you to protect your other home property and keep it for residential purposes?

"A  That's right; that's right.

"Q  Well, then, there wouldn't have been any objection. That was your understanding, that she would have obtained all of this property, then?

"A  No, not all of it. I don't—I just don't quite—are you inferring that at the time I made this arrangement, that I, with Mrs. Deane, included this whole thing?

"Q  Yes.

"A  No, I don't see how you could get that interpretation. We did discuss the fact that it should be sold and would be sold only for residential purposes, that part which I owned and that part which she owned.

"Q  Well, didn't you just testify that you had told Mr. Christensen of any difficulty, that you would convey it to her if it was maintained for residential purposes?

"A  That was my idea at that time. The first thing I knew there was a suit. Mrs. Deane never called on me, has never talked to me about the thing. I was hoping that she would."

There was other evidence indicating that Baker regarded the parcel in dispute as a part of the land intended to be conveyed. After the conveyance to plaintiff the defendants paid plaintiff for pasturing cattle in the enclosed parcel. In this connection the following testimony was elicited:

"Q  Well, now, was there any way that you determined how the rental was to be determined between this portion that you claim that you retained and this portion here (indicating)?

"A  The only way we had to determine that was by the maps Mrs. Deane had, that I discussed with

Mrs. Deane. The whole place had been plotted very carefully. Mrs. Deane has a map showing it in that proportion."

The non-responsive answer is not helpful in explaining the rental transaction. If the pasture land had been treated as embracing two parcels it seems strange that this fact would not have been discussed in arriving at the rental to be paid by defendants, and if it was discussed Baker could have responded directly to the question put to him.

Others dealt with plaintiff rather than the defendant for the rental of the tract enclosed by the fence along the traveled roads. The Milwaukie Rod & Gun Club was in search of a suitable site for shooting facilities. The club negotiated with plaintiff, not the defendants, for the property now in dispute.

More enlightening is the fact that the Milwaukie Saddle Club leased the property from plaintiff at a time when Baker was a member of the club. On cross-examination Baker testified as follows:

"Q  Did you know about the cattle the saddle club operating on her property and using this portion that is in dispute?

"A  At one time I was a member of the saddle club.

"Q  Did you also use that in connection as a member of the saddle club?

"A  Yes, sir.

"Q  Did you give the saddle club permission or—

"A  Well, I was perfectly willing to. I didn't care how much they used it. I don't know—I don't think they asked for written permission. I'm sure they didn't."

There were other incidents involving the use of the property which are more consistent with plaintiff's position than with defendant's. Baker's testimony as

viewed in the cold record was not very convincing; it is quite possible that the live testimony heard by the trial judge was even less convincing.

As a fiduciary Baker should be required to present a clearer explanation of the transaction than he did, in spite of the fact that plaintiff had the burden of proof. By rejecting our former opinion we not only do an injustice to plaintiff, but we do so by introducing into our law erroneous ideas with respect to the court's function in construing deeds. As a consequence the court excludes evidence which, if considered, would favor the plaintiff and in my opinion would, with other evidence, sustain her contention.

It is stated that the description in the deed does not create a latent ambiguity, yet the very quotation which is used to define a latent ambiguity gives as an illustration a description "where the call was for 'Swift Creek Swamp,' and it appeared that two points were called by the same name" and "it was held competent to show which point was intended by the call for 'Swift Creek Swamp'." That is essentially the situation before us. The description contains a call to Longcoy road and there are two roads which are known by that name. The majority opinion states "that the language of the deed points out the object described as the terminus so that it cannot be said that the language used may describe equally well both objects." But that assumes the very question we are trying to answer, i.e., which of the two roads did the parties have in mind in referring to Longcoy road. True, the distance to the vacated road is the same as the distance described in the deed. But this does not establish that there is no ambiguity as to the meaning of the call "Longcoy road" as used by the parties. The fact that the distance comports with the vacated road is evidence in support of

defendants' position. That, however, is only one inference supporting defendants' claim and there is other evidence supporting a contrary inference, i.e., that the traveled road popularly known as Longcoy road was intended.

In most of the deeds which come before courts for construction the language in the deed is perfectly clear and unambiguous. It is only when such words "are brought in contact with collateral facts" that is to say, in attempting to apply the various calls in laying out the description on the land, that ambiguity becomes apparent. In *Re Nystuen's Estate,* N D, 80 NW2d 671, 680 (1956). As pointed out in 9 Wigmore on Evidence (3d ed) § 2465, p 213, there is "always some concrete and local object, fully known to the parties but unknown to the Court, and in every such case it is obvious that 'words used must be translated into things and facts'; the parties to the deed almost always use terms of description which are peculiar to themselves." *Grimes v. Jordan,* Texas, 260 SW2d 220 (1953); *Ferris v. Emmons,* 214 Cal 501, 6 P2d 950 (1931). The majority opinion now records in our reports the adoption of the "rule against disturbing a clear meaning" (see Wigmore on Evidence (3d ed) § 2461 et seq.), the fallacy of which is recognized in all the respectable texts on evidence and in most of the adjudicated cases.

If our former opinion is to be rejected we should not do so at the cost of adopting a discredited rule of construction. We have before us the question of whether the parties to the deed, in referring to the Longcoy road, meant the vacated road or the existing road sometimes known by that name. We are free to examine any evidence tending to indicate which of these two roads was intended. With that evidence available it appears to me from the record that the more plausible explanation of the parties' purpose at the time of the

conveyance was to include the land up to the traveled road.

As I have already indicated, the fact that the distance given in the deed is identical with the distance up to the vacated road is some evidence in support of defendants' claim. However, there was evidence, a part of which is recited in our original opinion, showing a contrary intent. I believe that the latter evidence preponderates. I think that the majority of the court has over-emphasized the fact that the distance call conforms to the actual distance to the vacated road. Realizing the frequency with which attorneys and others draft descriptions with reference to maps, incorporating into the deed the measurements and other features appearing in the map, it would not be surprising if the draftsman in this case made the mistake of identifying the Longcoy road on a map as the road intended by the parties when in fact they had in mind the visible road known to them as Longcoy road. In this connection, I think that the visibility of the existing road and the non-visibility and nonexistence of the vacated road is significant. The rule of construction preferring *visible* monuments over other calls (ORS 93.310(2)) is in part a recognition that objects which can be seen, rather than the designation of invisible referents are normally intended by the parties to enclose the land conveyed. It is stated in Skelton, Boundaries and Adjacent Properties, § 171, p 157 that "visibility is an important element in determining the degree of certainty to be ascribed to a monument." The cases support this statement. The language in *Falls Village Water Power Co. v. Tibbetts*, 31 Conn 165, 167 (1862) is particularly appropriate:

> "* * * Now a road or highway, mentioned in a deed as a boundary, must be understood to mean, what is meant by other existing objects or monu-

ments described and intended as boundaries, viz., an object existing *in fact*, not of record merely— something *apparent*, unmistakable and permanent. The origin of a highway which the parties to a deed use as a boundary is immaterial, and it is not to be supposed that the parties thought of it. In the absence of any evidence to the contrary, they must be presumed to have intended the *then apparent* and traveled, and the only apparent and traveled highway between the points named, *passing* the land; and not a highway which existed of record, but had long been apparently abandoned by the public, and the existence and former use of which may not have been known to them."

In *Harris v. Hull, executor*, 70 Ga 831, 841 (1883) the court, relying upon Tyler, Law of Boundaries, p 119, stated that the rule that courses and distances must ordinarily yield to visible and ascertained objects is founded "upon the legal presumption that all grants and conveyances are made with reference to an actual view of the premises by the parties thereto." Tyler's Law of Boundaries, Fences and Window Lights, pp 119-120 (1876). See *Koch v. Gordon*, 231 Mo 645, 133 SW 609 (1910); *Smith v. Stacey*, 73 NYS 1022, 68 App Div 521 (1902); Clark on Surveying and Boundaries (3d ed) § 683 (1959). Where there are conflicting monuments normally the one which corresponds with the distance given will prevail. Patton on Titles, § 150, p 400. But this again is no more than a statement of a preference for a particular construction in the absence of evidence indicating a contrary intent. There was evidence of a contrary intent in the instant case. We properly appraised that evidence in our former opinion and we should now adhere to it.

McALLISTER, C. J. and SLOAN, J., concur in this dissent.