Argued October 27, 1969, reversed May 20, 1970

DOYLE ET UX, *Respondents, v.* GILBERT ET AL,
*Appellants.*

469 P2d 624

*B. D. Isaminger*, Pendleton, argued the cause for appellants. On the brief were Isaminger & Hanzen.

*Ralph Currin*, Pendleton, argued the cause for respondents. On the brief were Currin & French.

Before PERRY,* Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN** and DENECKE, Justices.

McALLISTER, J.

This is a declaratory judgment proceeding to settle the scope of an easement over plaintiffs' property. The trial court held that defendants have an easement over plaintiffs' property "for the purpose of ingress and egress for the construction and maintenance of necessary utilities and pipelines"; that defendants had enlarged the use of the easement by driving farm vehicles and equipment across it; and restrained and enjoined defendants "from the use of said easement except for the purpose of installation of pipelines and utilities." Defendants appeal.

There is attached to this opinion a simplified map of the various parcels of realty conveyed by the instruments which are exhibits in this case. All of the property involved in the various conveyances was at one time owned by the Caplinger family. In about July of 1960 they sold Tract A to the plaintiffs L. E. Doyle and his wife. Although the Doyles moved onto Tract A at about the time of the sale, no deed was executed until June 28, 1961, because the Caplingers had difficulty in clearing the title. The deed to Tract A was recorded July 3, 1961. It described as the prop-

---

* Perry, C.J., did not participate in this decision.
** Goodwin, J., resigned December 19, 1969.

erty being conveyed that designated on the map as Tract A, and continued:

"Subject to, for purposes of ingress and egress for construction and maintenance of necessary utilities and pipelines, an Easement 28 feet in width, being 14 feet on either side of the following described center line: [Then follows a legal description of the centerline of the easement shown on the map by a dotted line, apparently ending at the line between Tract A and Tract B]."

After providing that the property conveyed is also subject to an easement for ingress and egress to wells located on Tract A and for various activities connected with the wells, the deed continues:

"In connection with the easement for purposes of ingress and egress and for construction and maintenance of necessary utilities and pipelines above described, it is understood between the grantors and the grantees and their respective heirs and assigns that the grantors and their heirs and assigns shall bear the cost of maintenance and repair of the bridge located at the Southwest end of said easement but they shall have no liability for any damages resulting to the grantees, their heirs or assigns, or any of their agents, servants or invitees, by reason of any act or failure to act on the part of the grantors in the inspection, construction or repair of said bridge. It is also understood that the grantees, their heirs and assigns, shall erect no gates upon said easement except that they shall have the right to erect a gate at the Northeast end of said bridge and shall have the right to erect such cattle guards as they shall see fit provided that such cattle guards are suitable for safe passage of trucks and farm vehicles."

When Doyles purchased Tract A there was situated on the land retained by Caplinger a shop and a grain elevator. A road ran across Tract A from the

county road on the north and led to the shop on Tract B and the elevator on Tract C. It is conceded that this road followed the easement described in the Doyle deed and had been used by Caplinger for some years as a means of access to and from the elevator for trucks and farm vehicles. Caplinger testified that the elevator had been constructed in about 1946 and that the grain stored in the elevator was brought out over the road located in the easement described in the Doyle deed.

The bridge referred to in the deed was located just south of Tract A so that a gate maintained at the northeast end of the bridge would have been on or about the south boundary of Tract A.

Plaintiffs contend that the easement reserved by Caplinger in the Doyle deed could be used only for the construction and maintenance of utilities and pipelines.

Defendants, who have succeeded to the ownership of Tract C, contend that the Doyle deed reserved as appurtenant to Tract C an unrestricted easement for ingress and egress.[1]

■ The Doyle deed is patently ambiguous. It is our duty, therefore, to determine the intent of the parties from the language of the deed itself and from the surrounding circumstances. *O'Gorman v. Baker et ux*, 219 Or 170, 189, 338 P2d 638, 347 P2d 85 (1959); *United States Nat. Bank v. Miller et al*, 122 Or 285, 295-296, 258 P 205, 58 ALR 339 (1927); *Palmateer v. Reid*, 121 Or 179, 183, 254 P 359 (1927).

---

[1] By a later deed Caplinger conveyed Tract B, on which the bridge is located, to Doyles. That deed is in evidence, as are the conveyances in defendants' chain of title to Tract C. The use of the easement over Tract B is not put in issue by the pleadings. Because we think the proper construction of the deed conveying Tract A is clear, we do not find it necessary to discuss the terms of these other, later-recorded, conveyances.

■ We have no hesitation in holding that the intention of the parties to the Doyle deed was to create an easement for ingress and egress from the county road across Tract A. We will mention some of the considerations which impel us to that conclusion. In the first place the road along the easement was the only visible means of access to the elevator from the county road and obviously had been used for that purpose for some years. Secondly, there is no evidence that any utilities or pipelines had ever been installed in the easement or that anyone had any intention of using the easement for that purpose. The roadway was used for access to the elevator both during the year in which Doyle was waiting for a deed and during the following year without objection by Doyle. A carefully surveyed easement 28 feet in width was hardly necessary for the installation of utilities and pipelines but would be appropriate for an access roadway to a grain elevator.

In view of the surrounding circumstances the language of the deed itself leaves no doubt of the intention of the parties. First, the explanatory paragraph says precisely that the easement is for purposes of ingress and egress. Secondly, if the easement was to be used only for utilities the provision prohibiting the grantees from erecting gates across the easement would be superfluous. The permission to erect cattleguards is very persuasive. Cattleguards are to prevent the passage of cattle, but to permit the free passage of vehicles. The provision that any cattleguards are to be suitable "for safe passage of trucks and farm vehicles" is the clincher. The parties obviously contemplated that trucks and farm vehicles would be using the easement.

The decree is reversed and the proceeding is remanded for entry of a decree in accordance herewith.